# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MSP RECOVERY CLAIMS, SERIES LLC;
MSP RECOVERY CLAIMS PROV, SERIES
LLC; MSPA CLAIMS I, LLC; MAO-MSO
RECOVERY II, LLC, SERIES PMPI, a
segregated series of MAO-MSO RECOVERY
II, LLC; and MSP RECOVERY CLAIMS
SERIES 44, LLC,

       Plaintiffs,

       v.

PFIZER INC.; ADVANCED CARE SCRIPTS;
and PATIENT ACCESS NETWORK
FOUNDATION,

       Defendants.

**Civil Action No. 1:22-cv-01419-DLF**

## DEFENDANT PATIENT ACCESS NETWORK FOUNDATION'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.      PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS. ...................... 1

II.     THE RICO CLAIMS (COUNTS I AND II) SHOULD BE DISMISSED. ........... 4

      A.     The Indirect Purchaser Rule Applies and Bars Plaintiffs' RICO
Claims. ................................................................................................. 4

      B.     The Complaint Fails to Allege that Predicate Acts Proximately
Caused Plaintiffs' Injuries ........................................................................ 7

      C.     The Complaint Fails to Allege Predicate Acts of Racketeering
Activity. ............................................................................................... 10

            1.     The Complaint Does Not Adequately Allege Mail and Wire
Fraud. ...................................................................................... 10

            2.     The Complaint Does Not Adequately Allege Travel Act
Violations ................................................................................ 12

      D.     The Complaint Fails to Allege That PAN Participated In
Conducting The Affairs Of A RICO Enterprise. ..................................... 14

      E.     The RICO Claims Are Barred By The Statute of Limitations ................ 15

            1.     RICO Claims Accrue When The Alleged Injury Occurs ............. 15

            2.     Plaintiffs Fail to Allege Facts to Establish Fraudulent
Concealment. ........................................................................... 16

      F.     The RICO Conspiracy Claim Should Be Dismissed For The Same
Reasons and Because Plaintiffs Do Not Plausibly Allege an
Agreement. ............................................................................................. 19

III.    COUNT III (STATE CONSUMER FRAUD) SHOULD BE DISMISSED. ...... 19

      A.     Plaintiffs' Claims All Fail Because The Complaint Alleges No
Facts to Connect Any Particular Assignor's Claims to a Particular
State ....................................................................................................... 19

      B.     Claims Under the Consumer Protection Laws of Connecticut,
Florida, Illinois, New York, Ohio, South Carolina and Wisconsin
Law Are Untimely. ................................................................................. 20

      C.     PAN Did Not Engage In "Trade Or Commerce" As Required By
The Consumer Protection Laws of Several States, and Those
States' Statutes Do Not Establish Causes of Action For Aiding and
Abetting or Conspiracy. .......................................................................... 22

i

# TABLE OF CONTENTS
## (continued)

**Page**

    D.    Plaintiffs' Claims Under the Consumer Protection Laws of California, Massachusetts, Michigan, and Puerto Rico Fail for Additional Reasons. .............................................................................. 23

IV.    COUNT IV (UNJUST ENRICHMENT) SHOULD BE DISMISSED. .............. 24

V.    COUNT V (FLORIDA RICO) SHOULD BE DISMISSED. ............................ 25

CONCLUSION .................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*Abney v. Dolgencorp, LLC*,
2022 WL 210451 (E.D. Mich. Jan. 24, 2022)........................................................24

*In re Actimmune Mktg. Litig.*,
614 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................................................8

*\*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987)..............................................................................................5

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*,
406 F. Supp. 3d 72 (D.D.C. 2019) .......................................................................11

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
8 F.4th 1 (1st Cir. 2021)........................................................................................22

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019)..........................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................13

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015)..................................................................................9

*Barry v. Maple Bluff Country Club*,
586 N.W. 2d 182 (Wis. Ct. App. 1998) ...............................................................20

*Bates v. Nw. Hum. Servs., Inc.*,
466 F. Supp. 2d 69 (D.D.C. 2006) .......................................................................14

*Bepler v. Vorobek*,
2020 WL 1821110 (D.D.C. Apr. 10, 2020) ....................................................15, 16

*Brown v. Wachovia Bank*,
2007 WL 1378491 (D.D.C. May 10, 2007)...........................................................16

*Brown v. Wachovia Bank*,
2008 WL 2516476 (D.C. Cir. Feb. 26, 2008) .................................................15, 16

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)..............................................................................................22

*Couch v. Cate*,
379 F. App'x 560 (9th Cir. 2010) .........................................................................7

*Davis v. Fed. Election Comm'n,
   554 U.S. 724 (2008) ...................................................................................2, 20

District 1199P Health & Welfare Plan v. Janssen, L.P.,
   2008 WL 5413105 (D.N.J. Dec. 23, 2008) ...............................................9

Empire Merchs., LLC v. Reliable Churchill LLLP,
   902 F.3d 132 (2d Cir. 2018) .....................................................................8

*In re EpiPen Direct Purchaser Litig.,
   2022 WL 1017770 (D. Minn. Apr. 5, 2022) ............................................12

Feitelberg v. Credit Suisse First Boston, LLC,
   36 Cal. Rptr. 3d 592 (Cal Ct. App. 2005) ................................................23

Firestone v. Firestone,
   76 F.3d 1205 (D.C. Cir. 1996) .................................................................17

Friedman v. Sebelius,
   686 F.3d 813 (D.C. Cir. 2012) .................................................................12

Gilley v. Dunaway,
   572 F. App'x 303 (6th Cir. 2014) .............................................................18

Gredell v. Wyeth Lab'ys, Inc.,
   803 N.E. 2d 541 (Ill. App. Ct. 2004) .......................................................20

Hemi Grp., LLC v. City of New York,
   559 U.S. 1 (2010) ...................................................................................7, 8

Hofstetter v. Fletcher,
   905 F.2d 897 (6th Cir. 1988) ...................................................................20

*Holmes v. Sec. Inv. Prot. Corp.,
   503 U.S. 258 (1992) ..................................................................................4

*Humana, Inc. v. Indivior Inc.,
   2021 WL 3101593 (E.D. Pa. July 22, 2021) .............................................6

Humana, Inc. v. Indivior Inc.,
   2022 WL 17718342 (3d Cir. Dec. 15, 2022) ............................................4

Idea Public Charter Sch. v. Belton,
   2006 WL 667072 (D.D.C. Mar. 15, 2006) ...............................................16

Kasky v. Nike, Inc.,
   45 P.3d 243 (Cal. 2002) ...........................................................................23

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997) (Scalia, J., concurring) ........................................15

*Kokoszka v. Belford*,
    417 U.S. 642 (1974)............................................................................5

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ....................................................................23

*Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*,
    781 N.E. 2d 787 (Mass. 2003) ..........................................................23

*Larson v. Northrop Corp.*,
    21 F.3d 1164 (D.C. Cir. 1994).....................................................17, 18

*Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*,
    572 U.S. 118 (2014)............................................................................7

*Mack v. Bristol-Myers Squibb Co.*,
    673 So.2d 100 (Fla. App. 1996).........................................................25

*Madrid v. Perot Sys. Corp.*,
    30 Cal. Rptr. 3d 210 (Cal. Ct. App. 2005).........................................23

*MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*,
    281 F. Supp. 3d 1278 (S.D. Fla. 2017) ...............................................2

*Michaels v. NCO Fin. Sys. Inc.*,
    2020 WL 2800664 (D.D.C. May 29, 2000)........................................17

*Monahan Prods. LLC v. Sam's E., Inc.*,
    463 F. Supp. 3d 128 (D. Mass. 2020) ................................................23

*MSP Recovery Claims, Series LLC v. Abbott Lab'ys.*,
    2021 WL 2177548 (D.N.J. May 28, 2021) ...........................................1

*MSP Recovery Claims Series, LLC v. Avanir Pharms., Inc.*,
    2022 WL 17220647 (C.D. Cal. Oct. 20, 2022)................................1, 2

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
    2022 WL 3155035 (S.D. Fla. July 21, 2022), *R. & R. adopted by*, 2022 WL
    4448256 (S.D. Fla. Sept. 23, 2022)............................................1, 7, 25

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
    2019 WL 1418129 (D.N.J. Mar. 29, 2019)........................................1, 6

*MSP Recovery Claims, Series LLC v. Warner Chilcott PLC*,
    2019 WL 1333269 (D. Mass. Mar. 22, 2019).......................................1

*In re Nat'l Prescription Opiate Litig.*,
  440 F. Supp. 3d 773 (N.D. Ohio 2020) ....................................................................9

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
  712 F.3d 21 (1st Cir. 2013) ....................................................................................9

*New Eng. Gen-Connect, LLC v. US Carburetion, Inc.*,
  2019 WL 1332891 (D. Mass. Mar. 25, 2019) .........................................................24

*Nijhawan v. Holder*,
  557 U.S. 29 (2009) ................................................................................................12

*Northcross v. Bd. of Educ. of Memphis City Schs.*,
  412 U.S. 427 (1973) (per curiam) ............................................................................5

*Painters & Allied Trades Dist. Council 82 Health Fund v. Takeda Pharms. Co.*,
  943 F.3d 1243 (9th Cir. 2019) .................................................................................9

*Pocahontas Supreme Coal Co. Inc., v. Bethlehem Steel Corp.*,
  828 F.2d 211 (4th Cir. 1987) .................................................................................18

*\*Quick v. EduCap, Inc.*,
  318 F. Supp. 3d 121 (D.D.C. 2018) ..................................................................17, 18

*Rickman v. BMW of N. Am.*,
  2020 WL 3468250 (D.N.J. June 25, 2020) ...............................................................6

*Rodriguez v. Suzuki Motor Corp.*,
  570 F.3d 402 (1st Cir. 2009) .................................................................................24

*Rotella v. Wood*,
  528 U.S. 549 (2000) ....................................................................................15, 16, 17

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
  2009 WL 2043604 (D.N.J. July 10, 2009) ...............................................................8

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
  444 F. App'x 401 (11th Cir. 2011) ..........................................................................8

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
  806 F.3d 71 (2d Cir. 2015) .....................................................................................8

*Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys*,
  873 F.3d 574 (7th Cir. 2017) ..................................................................................8

*Singh v. Ashcroft*,
  383 F.3d 144 (3rd Cir. 2004) ................................................................................12

*Stanley v. Direct Energy Servs., LLC*,
  466 F. Supp. 3d 415 (S.D.N.Y. 2020) .......................................................20

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*,
  777 S.E. 2d 176 (S.C. 2015) ....................................................................20

*Suarez v. Tampa*,
  987 So. 2d 681 (Fla. Dist. Ct. App. 2008) ..............................................20

*Sundberg v. TTR Realty, LLC*,
  109 A.3d 1123 (D.C. 2015) ......................................................................22

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ...............................................................................2

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) ......................................................................6

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.
  Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) ....................................................................15

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*,
  251 F. Supp. 2d 28 (D.D.C. 2003) ...........................................................10

*United States ex rel. Hart v. McKesson Corp.*,
  2022 WL 1423476 (S.D.N.Y. May 5, 2022) .......................................10, 14

*United States v. Babaria*,
  775 F.3d 593 (3d Cir. 2014).....................................................................14

*United States v. Ferriero*,
  866 F.3d 107 (3d Cir. 2017).....................................................................13

*United States v. Gross*,
  370 F. Supp. 3d 1139 (C.D. Cal 2019) .....................................................14

*United States v. Khatallah*,
  41 F.4th 608 (D.C. Cir. 2022)...................................................................13

*United States v. Manzo*,
  851 F. Supp. 2d 797 (D.N.J. 2012) ..........................................................13

*United States v. Rogers*,
  389 F. Supp. 3d 774 (C.D. Cal. 2019) .................................................13, 14

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................13

*Vox Media, Inc. v. Mansfield*,
    322 F. Supp. 3d 19 (D.D.C. 2018) ...............................................................................18, 19

*In re Xarelto Prods. Liab. Litig.*,
    2021 WL 2853069 (E.D. La. July 8, 2021) .........................................................................8

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    2010 WL 3119499 (S.D. Ill. Aug. 5, 2010) .......................................................................9

*Youkelsone v. F.D.I.C.*,
    910 F. Supp. 2d 213 (D.D.C. 2012) .............................................................................15, 16

*Young v. S.E.C.*,
    956 F.3d 650 (D.C. Cir. 2020) ........................................................................................17

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
    546 F. Supp. 3d 1216 (S.D. Fla. 2021) .............................................................................4

*Zekman v. Direct Am. Marketers, Inc.*,
    695 N.E. 2d 853 (Ill. 1998) ............................................................................................22

**Statutes, Rules & Regulations**

42 C.F.R. § 423.4 .....................................................................................................................9

42 C.F.R. § 423.752(a)(1) ........................................................................................................9

15 U.S.C. § 15 ..........................................................................................................................4

18 U.S.C. § 1961(1) ...............................................................................................................10

18 U.S.C. § 1964(c) .............................................................................................................4, 5

31 U.S.C. § 3729 ...................................................................................................................10

42 U.S.C. § 1320a-7b(b) .......................................................................................................14

42 U.S.C. § 1320a-7b(g) .......................................................................................................10

42 U.S.C. § 1395w-27(g)(1)(a) & (2)–(4) ..............................................................................9

Fed. R. Civ. P. 8 ...............................................................................................................20, 24

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Cal. Bus. & Prof. Code § 17200, *et seq.* .............................................................................23

Fla. Stat. § 817.234(1)(a)(1) ................................................................................................25

Mass. Gen. Laws Chapter 93A, § 11 ........................................................................................23

Mich. Comp. Laws § 445.903(1)(a)–(ll).................................................................................24

31 P.R. Laws § 5141 .............................................................................................................24

## INTRODUCTION

Although lengthy, Plaintiffs' Oppositions serve only to create a fog that cannot hide the fatal flaws of their case.  The Complaint fails to allege facts necessary to establish standing and also fails to state a claim.  Recently, including twice since PAN filed its Motion to Dismiss, district courts have dismissed RICO claims brought by MSP Recovery against pharmaceutical companies on multiple grounds, including: (i) the Assignors are not direct purchasers;[1] (ii) lack of proximate causation (in a copay assistance case);[2] (iii) failure to plead fraud with particularity under Rule 9(b);[3] and (iv) statute of limitations.[4]  Here, Plaintiffs' RICO counts should be dismissed for all these reasons—and also because the Complaint does not allege that PAN participated in the conduct of any supposed RICO enterprise.  The Florida RICO count also fails for these reasons.

The state consumer protection claims should be dismissed because there are no factual allegations linking any Assignor to any state, because claims under seven states' laws are time-barred, and for multiple other reasons.  Finally, the unjust enrichment claim is not plausible and is supported only by conclusory assertions.

## ARGUMENT[5]

## I.   PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS.

The Complaint does not plausibly allege the assignment of a valid or timely claim.

---

[1] *MSP Recovery Claims, Series LLC v. Abbott Lab'ys.*, 2021 WL 2177548, at *7–8 (D.N.J. May 28, 2021); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *14, 16 (D.N.J. Mar. 29, 2019).

[2] *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 2022 WL 3155035, at *9–12 (S.D. Fla. July 21, 2022), *R. & R. adopted by*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022).

[3] *MSP Recovery Claims Series, LLC v. Avanir Pharms., Inc*., 2022 WL 17220647, at *7 (C.D. Cal. Oct. 20, 2022)

[4] *MSP Recovery Claims, Series LLC v. Warner Chilcott PLC*, 2019 WL 1333269, at *7 (D. Mass. Mar. 22, 2019).

[5] In addition to the arguments set out below, PAN incorporates and adopts the arguments of Pfizer and ACS in their reply briefs in support of their motions to dismiss.

1.      "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).[6]

Here, however, the Complaint fails to allege facts establishing that any of the five named Assignors paid for Sutent, Inlyta and/or Tikosyn, made such a payment before assigning its claims, or had a sufficient connection to the states (or which states) for which Plaintiffs assert a state law claim.  Plaintiffs argue that they have adequately alleged standing based on various allegations regarding "Assignors," *see* [ECF 53 at 3–7], but these allegations are not sufficient because the Complaint defines "Assignors" to mean, in the aggregate, the five named assignors plus an unknown number of additional, unnamed Assignors.  *See* Compl. ¶ 1.

In any event, there can be no doubt that Plaintiffs have not alleged standing for claims of *unidentified* Assignors where the facts of the supposed assignments have not been alleged.  *See Avanir Pharms.*, 2022 WL 17220647, at *4 ("The Complaint fails to allege sufficient facts to demonstrate that [MSP Recovery] has valid assignment agreements with any of these unidentified assignors"); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc*., 281 F. Supp. 3d 1278, 1282–83 (S.D. Fla. 2017).

2.      Plaintiffs' Opposition also makes plain that they lack standing to assert timely claims purportedly assigned by four Assignors:  (a) Interamerican Medical Group Center, LLC ("IMC"); (b) Preferred Medical Plan, Inc. ("Preferred"); (c) Health First Health Plans, Inc. ("Health First"); and (d) SummaCare, Inc. ("SummaCare").  The assignments of SummaCare, Preferred and Health First expressly state that only claims "existing on the date hereof" (*i.e.*, the date of the assignment) were assigned.  *See* Compl. App'x at 80, 82 and 83.  The quoted language

---

[6] Internal quotations, citations, and alterations have been omitted from all case citations.

from the IMC assignment also does not purport to assign future claims.  *See id*. at 81.

As PAN explained, IMC, Preferred and Health First made their purported assignments more than six years before the filing of this case, *see id.* at 80–84, but all relevant statutes of limitations are six years or shorter.  [ECF 50-1 at 12–13, 32–34].  Since the assignments assigned only claims existing as of the date of the assignment, these Assignors did not assign timely claims.  As a result, Plaintiffs lack standing.  SummaCare made its assignment more than four years before this Complaint was filed, and thus did not assign timely claims for causes of action with statutes of limitations that are four years or less.  [*Id.*].

In response, Plaintiffs argue that their claims are not time-barred [ECF 53 at 8–9], but that does not respond to PAN's point.[7]  As PAN explained in its opening brief, if a cause of action accrued *before* the assignment, then it is untimely.  If a cause of action accrued *after* the assignment, then it was not assigned.  Either way, Plaintiffs lack standing to assert timely claims assigned by IMC, Preferred, Health First and SummaCare.

Plaintiffs also assert that SummaCare made more recent assignments of some kind [*id.* at 8], but the Complaint contains no allegations regarding any such assignments.[8]

3.     Plaintiffs admit that two Assignors are not health insurers: (a) IMC; and (b) Centro de Pediátrica Medicina de Familia de Villalba, C.S.P.  They claim that these entities are "first tier and/or downstream entities that contracted with MAOs [Medicare Advantage Organizations] to provide certain services for Medicare beneficiaries" and "sustained injuries because of risk sharing agreements between upstream entities to offer Medicare benefits."  [ECF 53 at 3–4].  This

---

[7] In fact, Plaintiffs' RICO claims and most of its state-law claims are time-barred.  *See* [ECF 50-1 at 28–30 & 32–34] and *infra* at II.E and III.B.

[8] Plaintiffs assert that IMC's assignment authorized them to pursue its claims for up to a ten-year period, but that means only that Plaintiffs are allegedly authorized until 2024 to pursue IMC's claims that existed as of 2014. [ECF 53 at 8].  The Complaint does not allege this fact.

ambiguous jargon is no substitute for factual allegations, and the Complaint does not allege facts that explain how these entities were injured.  The Complaint also does not allege facts regarding the supposed "risk sharing" or how it caused an injury traceable to Defendants' conduct.

Plaintiffs cite an Eleventh Circuit case in which assignees of a MAO and various "downstream actors" stated a claim under the Medicare Secondary Payer law, [*id.*], but that decision did not hold that plaintiffs are not required to plead facts to establish standing.

## II.     THE RICO CLAIMS (COUNTS I AND II) SHOULD BE DISMISSED.

### A.     The Indirect Purchaser Rule Applies and Bars Plaintiffs' RICO Claims.

Although Plaintiffs represent that only a "minority of courts" have applied the indirect purchaser rule to RICO claims [ECF 54 at 24], in fact, "the majority of federal courts to address the issue have applied the [indirect purchaser] rule to RICO claims."  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1216, 1223 (S.D. Fla. 2021) (collecting cases).  Just days ago, the Third Circuit reaffirmed that the indirect purchaser rule applies to RICO.  *See Humana, Inc. v. Indivior Inc.*, 2022 WL 17718342, at *3-4 (3d Cir. Dec. 15, 2022).

As PAN has explained, the indirect purchaser rule applies to RICO claims because (1) the Supreme Court has interpreted Section 4 of the Clayton Act, 15 U.S.C. § 15, to mean that only direct purchasers can bring an antitrust claim for damages, and (2) because the RICO civil cause of action, 18 U.S.C. § 1964(c), is modeled on Section 4 of the Clayton Act, the Supreme Court has held that RICO should be interpreted in the same way as the Clayton Act.  *See* [ECF 50-1 at 18]; *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265–68 (1992).  The Supreme Court has described the "close similarity" of civil RICO and the Clayton Act in terms of their design, purpose, enforcement and remedial goals:

> Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees.  Both statutes bring to bear the pressure of "private attorneys general" on a serious

> national problem for which public prosecutorial resources are deemed inadequate; the mechanism chosen to reach the objective in both the Clayton Act and RICO is the carrot of treble damages.  Moreover, both statutes aim to compensate the same type of injury; each requires that a plaintiff show injury "in his business or property by reason of" a violation.

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 150–52 (1987).  Plaintiffs' position that the Clayton Act incorporates an indirect purchaser rule, but not RICO which was modeled on it, makes no sense.  *See Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (per curiam) ("The similarity of language in [the two statutes] is, of course, a strong indication that [they] should be interpreted *pari passu*").

Plaintiffs' attempt to apply the Whole Act Rule to 18 U.S.C. § 1964(c) Rule is flawed [ECF 54 at 23-24].  With ellipses, they omit crucial instructions from the Supreme Court about how to apply the Whole Act Rule, which directs courts to "not look merely to a particular clause in which general words may be used, but [to] take in connection with it the whole statute *(or statutes on the same subject) and the objects and policy* of the law, as indicated by its various provisions." *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974) (emphasis added).  The Whole Act Rule thus encourages courts to read Section 1964(c) in connection with the Clayton Act, which the Supreme Court has repeatedly done and which has led courts to apply the indirect purchaser rule to RICO.

Plaintiffs also assert that "[t]he Supreme Court declined to apply antitrust standing rules to RICO," and thus "RICO standing is defined by proximate causality."  [ECF 54 at 21–22].  That is not so.  None of the Supreme Court cases addressing RICO's proximate cause requirement cited by Plaintiffs purport to address, let alone contradict, the application of the indirect purchaser rule to RICO.  These cases are discussed in Pfizer's Reply Brief at Section III(A).

Although some district courts have held that the indirect purchaser rule does not apply to RICO [*see* ECF 54 at 24 n.38], these cases conflate two distinct requirements of a RICO claim: (1) statutory standing, and (2) proximate causation.  But these are separate and distinct issues.  *See,*

*e.g.*, *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612–15 (6th Cir. 2004) (distinguishing threshold question of RICO statutory standing from merits question of proximate cause); *Humana, Inc. v. Indivior Inc.*, 2021 WL 3101593, at *10 (E.D. Pa. July 22, 2021) (same), *aff'd* 2022 WL 17718342; *Rickman v. BMW of N. Am.*, 2020 WL 3468250, at *10 (D.N.J. June 25, 2020) (same); *Sanofi Aventis*, 2019 WL 1418129, at *16–17 (same).

Plaintiffs also try to evade the indirect purchaser rule by asserting that their RICO claims are "not premised on passed-on overcharges" and that the Assignors are "the direct and only victims." [ECF 54 at 25–26]. This is contradicted by the Complaint and Plaintiffs' briefs. Plaintiffs repeatedly contend that they paid "supracompetitive prices"—prices which were set by Pfizer's initial sale and necessarily passed down the chain of distribution before reaching Assignors. [*Id.* at 2–8 (describing roles of wholesalers and specialty pharmacies); ECF 52 at 13–14 (alleging that prices per dosage were "increased by Pfizer")]. And in any event, Plaintiffs do not dispute that the Assignors did not directly purchase Pfizer's drugs, and there is no exception to the indirect purchaser rule for "direct and only victims." *See Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1524 (2019) (the indirect purchaser rule is a "bright-line rule" and courts "should not engage in an unwarranted and counterproductive exercise to litigate a series of exceptions").

Finally, Plaintiffs argue that a co-conspirator exception to the indirect purchaser rule applies because they have also sued ACS, a supposed "middleman." [ECF 54 at 26]. Again, this fails because Assignors are not purchasers of Pfizer's drugs, but rather are insurers. And, there is no allegation in the Complaint that Assignors paid for any drug actually dispensed by ACS. Moreover, the co-conspirator exception cannot apply as to Tikosyn for the additional reason that there is no allegation that ACS ever filled prescriptions for Tikosyn (only that ACS filled prescriptions for Sutent and Inlyta). *See* Compl. ¶¶ 102, 107–08, 179, 187; [ECF 54 at 26 n.42].

**B.**   **The Complaint Fails to Allege that Predicate Acts Proximately Caused Plaintiffs' Injuries.**

The Complaint alleges that Assignors suffered two injuries that were allegedly caused by Defendants' conduct—they paid higher prices and they paid for higher quantities of Sutent, Inlyta and/or Tikosyn.  Compl. ¶¶ 2, 6, 11, 155, 187, 188, 192.  Neither of these purported injuries was *directly* caused by an alleged RICO predicate act, however.  [ECF 50-1 at 24–26].  Indeed, after PAN filed its opening brief, the Southern District of Florida dismissed another similar RICO case brought by Plaintiffs against another copay assistance charity for failure to allege proximate causation.  *See Caring Voice Coal.*, 2022 WL 3155035, at *9–12.  There, the court concluded the complaint did not plausibly allege that the defendants' conduct caused higher prices or higher quantities because copay assistance does not directly cause price increases and because of physicians' intervening role in making prescribing decisions.  *Id*.  The result here should be the same.  *See also Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed.").

Here, copay assistance was plainly not a proximate cause of the injury allegedly resulting from higher prices because, as PAN explained, copay assistance is not a price-setting activity.  [ECF 50-1 at 26].  As Plaintiffs themselves contend, any price increases were the result of other factors—the decisions and actions of buyers and sellers throughout the chain of distribution.  [ECF 53 at 30].  Plaintiffs argue that higher prices were a "foreseeable and natural consequence" of the alleged scheme because copay assistance supposedly removes price sensitivity on the part of patients who would not be able to afford Pfizer's drugs without financial assistance.  [*Id.* at 27].  The Supreme Court, however, has "explicitly rejected forseeability as a standard for determining proximate causation."  *Couch v. Cate*, 379 F. App'x 560, 565 (9th Cir. 2010) (citing *Hemi Grp.,*

7

*LLC v. City of New York*, 559 U.S. 1, 8–9, 12 (2010)).  Instead, the focus of the inquiry is "on the directness of the relationship between the conduct and the harm." *Hemi*, 559 U.S. at 12; *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 145 (2d Cir. 2018) ("[F]oreseeability and intention have little to no import for RICO's proximate cause test").

As to other supposed harms, in their opposition, Plaintiffs **now do not argue** that any predicate acts proximately caused the Assignors to pay for higher volumes of Sutent, Inlyta and Tikosyn (as alleged in the Complaint).  Plaintiffs omit this and instead offer up a new theory: that the predicate acts allegedly caused injury in the form of causing Assignors to pay claims "tainted" by alleged Anti-Kickback Statute ("AKS") violations.  [ECF 53 at 26 (not including increased volume as among the "two ways" that the "Scheme [] proximately caused injury to Assignors")].[9]

Plaintiffs' new "AKS-tainted claims" theory fails the proximate cause requirement for multiple reasons.  *First*, even if the allegations in the Complaint are assumed to be true, without allegations that physicians were paid kickbacks to induce them to prescribe Pfizer's drugs, then the physicians' independent decisions to write prescriptions for Pfizer's drugs eliminates proximate cause.  Any alleged kickbacks did not affect the writing of prescriptions by physicians.  Many courts have held that there is no RICO proximate causation based on payments for pharmaceutical products where physicians make independent and untainted medical decisions to prescribe drugs.  *See* [ECF 50-1 at 25–26].[10]

---

[9] Plaintiffs remarkably assert that "PAN fails to contest" that its conduct caused Assignors to pay AKS-tainted claims.  [ECF 53 at 27 n.34].  Of course, that is because the Complaint's theory was that the predicate acts caused an increased volume of claims—a theory that has now been dropped.

[10] *See Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys*, 873 F.3d 574, 578 (7th Cir. 2017); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 90–91 (2d Cir. 2015); *Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 410 (11th Cir. 2011); *In re Xarelto Prods. Liab. Litig.*, 2021 WL 2853069, at *4–8 (E.D. La. July 8, 2021); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *26 (D.N.J. July 10, 2009); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1053 (N.D.

Plaintiffs rely on cases where courts held that RICO proximate causation was adequately alleged by third-party payors despite the role of physicians writing prescriptions. [ECF 53 at 28–29.] These cases are easily distinguished. In each, the courts found that proximate cause was satisfied because the manufacturers allegedly made direct misrepresentations aimed at prescribing physicians to write prescriptions and/or third-party payors to place drugs on their formularies, and those misrepresentations were relied upon directly.[11]

Without explaining how this contention fits into the analysis, Plaintiffs also argue that payment from PAN somehow "caus[ed]" prescriptions to be dispensed. [*Id.* at 28]. Plaintiffs charge that PAN "completely misconstrues the process for claim submission," and that it was PAN's payment of copays that triggered pharmacies to fill prescriptions, not the physicians' prescription. [*Id.*] PAN "misconstrue[d]" nothing. As the Complaint itself alleges, the payment process is the opposite of what Plaintiffs suggest: a specialty pharmacy dispenses the drug to a patient (based on a prescription) and PAN then pays the pharmacy for the patient's co-payment obligation only *after* the insurer has paid. *See* Compl. ¶ 150.

Finally, Plaintiffs' new AKS-tainted claims theory fails as a matter of law. MAOs are required to pay medically necessary claims. *See* 42 U.S.C. § 1395w-27(g)(1)(a) & (2)–(4); 42 C.F.R. §§ 423.4 & 423.752(a)(1). And the Complaint never alleges that any Assignor paid a claim

---

Cal. 2009); *District 1199P Health & Welfare Plan v. Janssen, L.P.,* 2008 WL 5413105, at *9 (D.N.J. Dec. 23, 2008); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.,* 2010 WL 3119499, at *8 (S.D. Ill. Aug. 5, 2010).

[11] *See In re Nat'l Prescription Opiate Litig.,* 440 F. Supp. 3d 773, 790–91, 796–97 (N.D. Ohio 2020) (direct misrepresentations made to payor-plaintiffs, who relied upon misrepresentations to place drugs on formularies and to fail to impose adequate controls); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 804 F.3d 633, 644–46 (3d Cir. 2015) (same); *In re Neurontin Mktg. & Sales Pracs. Litig.,* 712 F.3d 21, 36–40 (1st Cir. 2013) (direct fraudulent marketing of off-label use to prescribing physicians); *Painters & Allied Trades Dist. Council 82 Health Fund v. Takeda Pharms. Co.,* 943 F.3d 1243, 1257–60 (9th Cir. 2019) (direct misrepresentations of drug's safety risks to prescribing physicians).

that was not medically necessary.

It is true that a claim submitted to Medicare that "resulted from" an AKS violation can result in liability *to the United States Government* under the False Claims Act ("FCA"), 31 U.S.C. § 3729.  *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of [the FCA]").  But this is not a FCA case and Assignors are not the United States Government.

The AKS is a criminal statute that lacks a private cause of action.  *See United States ex rel. Barrett v. Columbia/HCA Healthcare Corp*., 251 F. Supp. 2d 28, 37 (D.D.C. 2003).  Although "[t]he AKS and FCA work in conjunction to create a private right of action for violation of the federal criminal anti-kickback statute," there is no such connection between RICO and AKS. *United States ex rel. Hart v. McKesson Corp.*, 2022 WL 1423476, at *5 (S.D.N.Y. May 5, 2022). Indeed, the AKS is not a predicate act under RICO.  *See* 18 U.S.C. § 1961(1).

Accordingly, the Complaint fails to allege that PAN proximately caused Assignors to pay higher prices or, under their new theory, to pay non-reimbursable AKS-tainted claims.

**C.    The Complaint Fails to Allege Predicate Acts of Racketeering Activity.**

**1.    The Complaint Does Not Adequately Allege Mail and Wire Fraud.**

Although Plaintiffs claim they need only provide "adequate notice" of the fraud they allege, the D.C. Circuit has explained that Rule 9(b) requires a plaintiff alleging fraud to allege the who, what, when, where, and how of the purported fraud with particularity.  *See* Pfizer Reply at III.B.2; ACS Reply at II.A; [ECF 50-1 at 9–10, 14–17].  Plaintiffs offer only scattershot and conclusory assertions of PAN's alleged mail/wire fraud.  [ECF 53 at 14–16, 20–21, 23].  But the Complaint does not allege who made any false statements, when they were made, or the content of any supposedly false statements, as Rule 9(b) requires.

Nor does it allege that PAN acted with specific intent to defraud, a necessary element of

mail/wire fraud.  *See Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 80–81 (D.D.C. 2019) (dismissing RICO claim based on mail/wire fraud for failure to allege specific intent to defraud).

The only fraudulent misrepresentations alleged against PAN are purportedly "misleading" statements made to the OIG to obtain its Advisory Opinion and subsequent modification.  [ECF 53 at 14–16, 20–21, 23].  Referring to the arrhythmia fund, Plaintiffs contend that PAN misled the OIG by falsely certifying that PAN would not "create funds to subsidize drug(s) manufactured by a single manufacturer."  [*Id*. at 14–15].  In fact, the relevant certification was made in connection with the October 2015 modification to PAN's Advisory Opinion.  *See* Compl. ¶ 129 & Ex. O.  There, PAN certified that it would include within its disease fund formularies all drugs that treat a disease (and if all such drugs are manufactured by the same company, a formulary must also include drugs that treat symptoms or side effects).  Compl. Ex. O at 2.  The Complaint does not allege that the formulary for PAN's arrythmia fund did not contain all required products.  Pfizer's settlement agreement states that Tikosyn patients accounted for "virtually all" the beneficiaries of the fund, Compl. ¶ 102, but it contains no statements regarding PAN's conduct that are inconsistent with PAN's Advisory Opinion.

Plaintiffs also assert that PAN deviated from the OIG guidance because the OIG would not consider a charitable foundation that is "formed, funded or controlled by" a pharmaceutical manufacturer to be a *bona fide* independent charity.  [ECF 53 at 15].  But the Complaint does not allege facts that PAN was formed, funded or controlled by a pharmaceutical company (it was not).  Plaintiffs also contend that PAN misled the OIG because PAN was allegedly a "conduit" for Pfizer to provide money to patients prescribed its drugs.  [*Id.* at 2, 15–16, 34].  But, that is simply a general conclusory assertion, not an allegation of a specific false statement to the OIG.

11

Next, Plaintiffs assert that PAN falsely stated to the OIG that it would apply its financial need criteria consistently, but instead provided copay assistance "based upon the wishes of the donor" and "whether the applicant was eligible to take a drug prescribed by its donor." [*Id.* at 15]. But the Complaint contains no such factual allegations. Plaintiffs cite eighteen paragraphs of the Complaint, but none alleges any facts about how PAN applied its financial need criteria to patient applications. [*Id.*]

And, finally, Plaintiffs cite PAN's settlement with the Government as somehow demonstrating mail and wire fraud. [*Id.* at 14]. But that settlement had nothing to do with Pfizer or the drugs at issue in this case. [ECF 50-1 at 8–9.]

Plaintiffs' lengthy Complaint contains many irrelevancies and redundancies. What it lacks are specific factual allegations necessary to plead mail or wire fraud with Rule 9(b) particularity.

## 2.    The Complaint Does Not Adequately Allege Travel Act Violations.

Plaintiffs do not dispute that the AKS is broader than bribery under the Travel Act, as PAN demonstrated. [ECF 50-1 at 23–24]. Rather, Plaintiffs argue that the "categorical" analysis applies solely in the sentencing context and contend that the court in *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770 (D. Minn. Apr. 5, 2022), erred by applying the categorical approach instead of a conduct-based approach to determine whether a complaint states a Travel Act violation. [ECF 54 at 15–18].

"Whether the Congress intended the categorical or the circumstance-specific approach is to be discerned from the text, structure, and purpose of the particular statute at issue." *Friedman v. Sebelius*, 686 F.3d 813, 819 (D.C. Cir. 2012). In *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009), the Court held that the categorical approach is correct for crimes described in generic terms that do not invite inquiry into the specific facts. *See also Singh v. Ashcroft*, 383 F.3d 144, 161 (3rd Cir. 2004) (stating that the categorical approach is appropriate when the statute uses "relatively

unitary categorical concepts," like "forgery," "burglary" or "crime[s] of violence," that "do[] not invite" an inquiry into the underlying facts); *United States v. Khatallah*, 41 F.4th 608, 627 (D.C. Cir. 2022).  Here, the categorical approach is correct because the Travel Act uses the term "bribery," a generic, categorical term that does not invite inquiry into specific facts of the case

Even if a conduct-based approach applies, as Plaintiffs argue, the Travel Act theory fails. Under this approach, the Complaint must allege facts to establish both a violation of "generic bribery" and of the AKS in particular.  *See United States v. Manzo*, 851 F. Supp. 2d 797, 804, 806–07 (D.N.J. 2012); *United States v. Rogers*, 389 F. Supp. 3d 774, 793 (C.D. Cal. 2019).  Plaintiffs fail to do so.

*First*, Plaintiffs now state that their theory of bribery is that Pfizer "bribed PAN to recommend and arrange, with ACS's assistance, for Government beneficiaries to receive Pfizer's medication at the expense of MAOs," in violation of the AKS.  [ECF 54 at 15].[12]  The Complaint, however, alleges no facts that PAN recommended or arranged for patients to receive Pfizer's drugs. To the contrary, the Complaint alleges that *physicians* prescribed those drugs, and PAN provided copay assistance after the fact.  Compl. ¶¶ 102, 107, 139(e), 150.  Plaintiffs' unsupported, conclusory assertion is insufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[13]

*Second*, generic bribery under the Travel Act requires a bribe to corrupt a person who occupies a position of "special trust."  Although Plaintiffs argue that this element is not required, [ECF 54 at 18–19], courts have held otherwise.  *See, e.g.*, *United States v. Ferriero*, 866 F.3d 107,

---

[12] Plaintiffs contradict this assertion elsewhere where they contend that PAN merely was an intermediate "conduit" for Pfizer to convey money to patients.  *See* Compl. ¶¶ 102, 112, 154.

[13] Plaintiffs argue against application of Rule 9(b)'s heightened pleading standard to the Travel Act claim.  [ECF 53 at 10–11].  While bribery allegations may not always be subject to Rule 9(b), when those allegations are intertwined with and dependent on allegations of fraud—as here—Rule 9(b) applies.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (allegations "grounded in fraud" are governed by Rule 9(b)).

123–24 (3d Cir. 2017).  Even the cases that Plaintiffs rely upon to argue against the categorical approach agree that a position of special trust is required to meet the "generic bribery" requirement. *See Rogers*, 389 F. Supp. 3d at 786–87; *United States v. Gross*, 370 F. Supp. 3d 1139, 1149–50 (C.D. Cal 2019).  Plaintiffs cite no authority holding that generic bribery does not require bribing a person in a position of special trust.  Because the Complaint fails to allege that PAN held a position of special trust, let alone that donations by Pfizer corrupted PAN, the Complaint fails to allege a Travel Act violation.

Unable to demonstrate that PAN held a position of special trust (which it did not), Plaintiffs cite inapposite criminal cases in which courts applied the U.S. Sentencing Guidelines' "abuse of trust" enhancement when sentencing defendants convicted of AKS violations.  [ECF 54 at 19–20]. For example, Plaintiffs cite *United States v. Babaria*, which affirmed an abuse of trust enhancement for a defendant who used his medical license and position to commit an offense for which he was convicted.  775 F.3d 593, 597 (3d Cir. 2014).  None of Plaintiffs' cases suggests that AKS violations inherently implicate a relationship of special trust.  Rather, the sentence enhancements in each case were due to the individual defendant's specific role and conduct—not because the statute violated was the AKS or because of the nature of healthcare fraud generally.

And, *third*, as PAN argued but as Plaintiffs ignore, the Complaint fails to allege any facts that PAN acted "willfully," which is required to state a claim premised on a violation of the AKS. *See* 42 U.S.C. § 1320a-7b(b); [ECF 50 at 22–23 (citing *Hart*, 2022 WL 1423476, at *14–15)].

### D.     The Complaint Fails to Allege That PAN Participated In Conducting The Affairs Of A RICO Enterprise.

Plaintiffs' RICO claim also fails because the Complaint does not plausibly allege that PAN participated or managed the affairs of the enterprise, as opposed to "commit[ing] a pattern of predicate acts in the conduct of its own business."  [ECF 50-1 at 26 (quoting *Bates v. Nw. Hum.*

*Servs., Inc.*, 466 F. Supp. 2d 69, 86 (D.D.C. 2006))].

Plaintiffs simply *assume* that PAN's conduct was a violation of the AKS, [ECF 53 at 31], but the Complaint does not allege that PAN's actions were anything but ordinary business conduct. In particular, Plaintiffs point to the facts that PAN (1) accepted donations (purported "bribes") from Pfizer, (2) provided charitable financial assistance ("subsidies") to beneficiaries, and (3) in some unspecified way, shared data with Pfizer and ACS. [*Id.*]. Those activities are PAN's lawful business model, done in accordance with the OIG Advisory Opinion and guidance—to accept donations and provide co-pay assistance to financially needy patients. And, as explained, there is no allegation that PAN provided any data to ACS other than through the payment of claims for Sutent and Inlyta. [ECF 50-1 at 15–16, 27]. Stripped of Plaintiffs' characterizations, each of those actions is simply part of PAN "going about its own business," which cannot sustain a RICO claim. *See* [*id.* at 27 (quoting *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854–55 (7th Cir. 2013))].

### E. The RICO Claims Are Barred By The Statute of Limitations.

#### 1. RICO Claims Accrue When The Alleged Injury Occurs.

Justice Scalia has explained that RICO claims accrue when the injury occurs—not when the injury is discovered—with straightforward and unassailable legal reasoning. Because RICO borrows the Clayton Act's statute of limitations and because claims under the Clayton Act accrue when the injury occurs, claims under RICO must also accrue when the injury occurs. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 198–99 (1997) (Scalia, J., concurring); *see* [ECF 50-1 at 28–29].

Plaintiffs do not respond to this reasoning. Instead, they argue that the Court should reject the injury occurrence rule "due to" *Rotella v. Wood*, 528 U.S. 549 (2000), *Brown v. Wachovia Bank*, 2008 WL 2516476 (D.C. Cir. Feb. 26, 2008) (per curiam), *Youkelsone v. F.D.I.C.*, 910 F. Supp. 2d 213 (D.D.C. 2012), and *Bepler v. Vorobek*, 2020 WL 1821110 (D.D.C. Apr. 10, 2020).

*Rotella* and *Brown* do not decide the question.  And the two district court decisions neither bind this court, *see Idea Public Charter Sch. v. Belton*, 2006 WL 667072, at *5 n.6 (D.D.C. Mar. 15, 2006), nor serve as persuasive authority.

In *Rotella*, the Supreme Court held that some courts erred in applying an "injury and pattern" discovery accrual rule, and expressly declined to decide between the injury discovery and injury accrual rules.  *See* 528 U.S. at 554 n.2.  *Brown*, an unpublished and non-precedential decision, implies nothing about which of the two accrual rules to select.  The entirety of the D.C. Circuit's discussion is as follows:  "Appellant's claims against Kennedy Thompson and Wachovia Bank are barred by the statute of limitations."  *Brown*, 2008 WL 2516476, at *1.[14]

In *Youkelsone*, although the district court applied the injury discovery rule, it did not resolve the question of when a RICO claim accrues, because the RICO claim was untimely under either accrual rule.  *See* 910 F. Supp. 2d at 226 n.20.  Similarly, in *Bepler*, the district court noted in dictum in a footnote that the claims appeared to be untimely because the plaintiffs knew of their injuries six years before filing suit, but did so without analysis and in a context where the RICO claim was time-barred under either accrual rule.  2020 WL 1821110, at *3 n.4.

Here, because the Assignors' alleged injury occurred from 2012 to 2016, *see* Compl. ¶¶ 86, 102, the RICO claim is barred by the four-year statute of limitations.

### 2.    Plaintiffs Fail to Allege Facts to Establish Fraudulent Concealment.

Although Plaintiffs seek to avoid dismissal by contending that fraudulent concealment tolls the limitations period, they have failed to allege that PAN concealed evidence of any alleged wrongdoing.  [ECF 53 at 34–35].  To plead fraudulent concealment, Plaintiffs must allege:

---

[14] In *Brown*, a *pro se* prisoner alleged that the FBI's seizure of cash from his residence fifteen years earlier violated RICO; his frivolous RICO claim was time-barred under any conceivable accrual rule.  *See Brown v. Wachovia Bank*, 2007 WL 1378491, at *1–2, 4 (D.D.C. May 10, 2007).

"(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996); *see also Quick v. EduCap, Inc.*, 318 F. Supp. 3d 121, 143 (D.D.C. 2018); *Michaels v. NCO Fin. Sys. Inc.*, 2020 WL 2800664, at *5 (D.D.C. May 29, 2000).   The alleged fraudulent concealment elements must be pled with particularity under Rule 9(b).  *Firestone*, 76 F.3d at 1211. Equitable tolling doctrines like fraudulent concealment are "the exception, not the rule" and "appropriate only in rare instances." *Rotella*, 528 U.S. at 561; *see Young v. S.E.C.*, 956 F.3d 650, 656–57 (D.C. Cir. 2020).

"'Generally, fraudulent concealment requires that the defendant make an affirmative misrepresentation tending to prevent the discovery of the wrongdoing.'" *Michaels*, 2020 WL 2800664, at *5 (quoting *Quick*, 318 F. Supp. 3d at 143).  "Concealment by mere silence is not enough." *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994).  Plaintiffs must allege "actual concealment—*i.e.*, some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id*.

The Complaint does not meet these standards.  Plaintiffs argue that PAN held itself out as an independent charity when it actually allegedly violated its OIG Advisory Opinion and that PAN allegedly "continually recertified compliance with OIG regulations."  [ECF 53 at 34].  They do not describe these "continual recertifications," when the recertifications occurred or what was expressed, however.  [*Id*.]  None of these are allegations of "actual concealment," "trick," "contrivance," or affirmative misrepresentation "designed to conceal" a cause of action.  And none is alleged with the particularity required by Rule 9(b).

At best, these are simply arguments that PAN did not publicly disclose the allegations in

the Complaint. But, to constitute fraudulent concealment, the "concealment must rise to something more than merely a failure to disclose." *Larson*, 21 F.3d at 1174. That is because "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct . . . would effectively nullify the statute of limitations." *Pocahontas Supreme Coal Co. Inc., v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987); *see also Quick*, 318 F. Supp. 3d at 143–44 (holding that plaintiffs failed to plead fraudulent concealment because they did not allege that defendants made an affirmative misrepresentation that prevented them from discovering the falsity of an affidavit used in an earlier debt collection action).

Additionally, Plaintiffs argue that PAN is responsible for fraudulent concealment for a mishmash of alleged actions taken by others, including that Pfizer publicly reported its donations to PAN; that pharmacies continued to submit claims that allegedly contained false representations of regulatory compliance; and that Pfizer reported on sales growth in its SEC filings without also attributing that growth to donations to PAN. [ECF 53 at 35]. These assertions do not involve alleged concealment *by PAN*, do not involve misrepresentations by anyone designed to conceal Assignors' causes of action, and were not pled with particularity under Rule 9(b).

Moreover, Plaintiffs do not explain how the Complaint has alleged acts of fraudulent concealment when, as PAN pointed out, Pfizer disclosed the investigation of the Massachusetts U.S. Attorney's Office in six SEC filings in 2017 and 2018. [ECF 50-1 at 30]. Plaintiffs ignore these disclosures, which render their fraudulent concealment allegations implausible. *See Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) (holding that the plaintiff had not plausibly alleged fraudulent concealment where defendants had discussed the alleged wrongdoing with the plaintiff's mother).

Finally, Plaintiffs rely on *Vox Media, Inc. v. Mansfield*, 322 F. Supp. 3d 19, 24 (D.D.C.

2018), but that case is easily distinguished.  There, an employer sued its former employee for allegedly stealing reward points from the employer's credit card rewards account.  *Id*. at 22.  The employer adequately alleged fraudulent concealment because its employee had a fiduciary duty to disclose his alleged theft and also took affirmative actions to hide the fraud from his employer.  *Id*. at 24–25.  The employee gave only himself access to the corporate rewards account and downplayed to others the financial value of the rewards program.  *Id*.  Here, by contrast, no such facts of concealment are alleged against PAN, and PAN owed the Assignors no fiduciary duties.

Accordingly, Plaintiffs have failed adequately to allege fraudulent concealment.

**F.**  **The RICO Conspiracy Claim Should Be Dismissed For The Same Reasons and Because Plaintiffs Do Not Plausibly Allege an Agreement.**

Because Plaintiffs have failed to plead a RICO violation for the reasons explained above, the RICO conspiracy claim in Count II must fail as well.  Count II also fails because the Complaint does not allege any agreement among PAN, Pfizer, and ACS to commit RICO predicate acts. Although not alleged, Plaintiffs now claim that the Court can infer a conspiratorial agreement from the circumstances, as the Defendants had the "singular goal to eliminate price insensitivity and raise prices to supra-competitive levels."  [ECF 54 at 36].  But there are no non-conclusory allegations to support this inference or this purportedly "singular goal."  *See* ACS Reply at IV.D.

**III.**  **COUNT III (STATE CONSUMER FRAUD) SHOULD BE DISMISSED.**

**A.**  **Plaintiffs' Claims All Fail Because The Complaint Alleges No Facts to Connect Any Particular Assignor's Claims to a Particular State.**

The Complaint purports to allege claims under the consumer protection laws of eleven different states and Puerto Rico, but without linking any Assignor to any particular state or explaining why that particular Assignor has a claim under that particular state's consumer protection laws.  These failures are fatal, as PAN and Pfizer have explained, and Plaintiffs have failed to address this glaring deficiency.  [ECF 47-1 at 34–35; ECF 50-1 at 31–32].

Under Rule 8, Rule 9(b) or any other pleading standard, a plaintiff must allege facts sufficient to tie its injury and the alleged misconduct to a state before invoking its consumer protection statutes. Likewise, such allegations are necessary to establish standing, which is not "dispensed in gross." *See Davis*, 554 U.S. at 734 (standing must be separately established for each separate claim). PAN incorporates Pfizer's further explanation in its Reply Brief at Section IV(A).

**B.**  **Claims Under the Consumer Protection Laws of Connecticut, Florida, Illinois, New York, Ohio, South Carolina and Wisconsin Law Are Untimely.**

As PAN explained, Plaintiffs' consumer protection claims brought under Connecticut, Florida, Illinois, New York, Ohio, South Carolina, and Wisconsin statutes are time-barred. [ECF 50-1 at 32–34]. In response, Plaintiffs argue that their claims are timely under the continuing violation doctrine because they supposedly allege an ongoing harm in footnote 9 and Paragraph 147 of the Complaint. [ECF 53 at 37]. Allegations of ongoing *injury* do not trigger the continuing violation doctrine, however. The cases cited by Plaintiffs [*Id.* at 38 n.46] all hold that the continuing violation doctrine applies only in certain instances where a defendant engaged in continuing tortious conduct, and *that it does not arise from ongoing harm from past conduct*.[15]

Moreover, the Complaint does not allege continuing violations. Footnote 9 states that

---

[15] *See Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020) ("[A] continuing violation theory must be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct."); *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E. 2d 176, 200 (S.C. 2015) ("[A]n unlawful method, act, or practice may result in multiple statutory violations, and it is the violations themselves that cause the statute of limitations to begin to run."); *Suarez v. Tampa*, 987 So. 2d 681, 686 (Fla. Dist. Ct. App. 2008) ("A continuing tort is established by continual tortious *acts,* not by continual harmful effects from an original, completed act."); *Gredell v. Wyeth Lab'ys, Inc.*, 803 N.E. 2d 541, 547 (Ill. App. Ct. 2004) ("A continuing violation . . . is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation."); *Barry v. Maple Bluff Country Club*, 586 N.W. 2d 182, 190–91 (Wis. Ct. App. 1998) (holding that continuing violations are established by tortious acts, not the effects of those acts); *Hofstetter v. Fletcher*, 905 F.2d 897, 906–07 (6th Cir. 1988) (claim not barred where defendant gave "continued assurances and blatantly improper advice" in Ohio's two-year limitations period).

while the Pfizer's DOJ settlement addressed the 2012–2016 timeframe, Plaintiffs believe the conduct may have begun *earlier*; it states nothing about the period *after* 2016. Paragraph 147 states that "Assignors paid over $22.6 million in claims for the Subject Pfizer Drugs from at least January 1, 2012, to present." Even if true, this is not a factual allegation regarding the alleged scheme's duration, (nor is it even an allegation of a continuing harm resulting from prior conduct).

Even more, the Complaint explicitly states that the alleged "***Scheme ended***" in 2016 and that 2016 was "***the final year of the Scheme***," *i.e.*, the alleged "Co-Payment Circumvention Enterprise." Compl. ¶¶ 2, 86 (emphasis added). Likewise, the proposed class is defined as certain organizations "that bore all or part of the expense to purchase the Subject Pfizer Drugs ***between January 1, 2012 through December 31, 2016***." *Id.* ¶ 159 (emphasis added). And Pfizer's Settlement Agreement with the DOJ—the source from which the allegations of wrongdoing were cribbed—alleges conduct occurring only until 2016. *Id.* ¶ 102.

Alternatively, Plaintiffs assert in one sentence that "Defendants necessarily engaged in ongoing, continuous efforts to conceal and perpetuate the Scheme, and the facts do not establish when the last wrongful act occurred." [ECF 53 at 38]. As explained above, Plaintiffs have not adequately alleged fraudulent concealment. *See supra* at II.E.2.

Finally, Plaintiffs assert that, under Connecticut law, Defendants had an ongoing duty to correct or ameliorate their alleged misconduct because of Defendants' "special relationship" with Assignors. [ECF 53 at 37–38]. The Complaint alleges no facts establishing a "special relationship." Moreover, as discussed above, *supra* at II.C.2, Plaintiffs' reliance on cases applying the Sentencing Guidelines' "abuse of trust" sentencing enhancement is inapposite.

The Court should therefore dismiss the claims in Count III under Connecticut, Florida, Illinois, New York, Ohio, South Carolina, and Wisconsin statutes as untimely.

## C.    PAN Did Not Engage In "Trade Or Commerce" As Required By The Consumer Protection Laws of Several States, and Those States' Statutes Do Not Establish Causes of Action For Aiding and Abetting or Conspiracy.

PAN has explained that it is not liable under the consumer protection statutes of Massachusetts, Michigan, Pennsylvania, Illinois and South Carolina because there is no allegation that PAN engaged in "trade or commerce," as those laws require.  [ECF 50-1 at 35–39].  Plaintiffs do not dispute this. [ECF 53 at 40–42].  Instead, they argue that *Pfizer* and *ACS* engaged in "trade or commerce" and that PAN is liable for allegedly aiding and abetting or conspiring to violate these laws.  [*Id.*].  The Complaint, however, lacks such allegations.

Furthermore, Plaintiffs' argument fails because the five state statutes in question do not provide for aiding and abetting or for conspiracy liability.  For statutory causes of action, courts lack the authority to create liability for persons or for conduct where the legislature did not do so.  The Supreme Court has emphasized this point in the context of federal laws.  *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 175–77 (1994); *see also Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015).

Applying this same reasoning, and relying on *Bank of Denver*, the First Circuit has held that no cause of action exists for aiding and abetting under the Massachusetts consumer protection law because the legislature did not include such a cause of action in the statutory text.  *See Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 24 (1st Cir. 2021).  Likewise, the Illinois Supreme Court refused to extend liability to include a party's knowing receipt of the benefits of another's fraud, because doing so "would require us to read into the statute violations that are not part of the statutory text." *Zekman v. Direct Am. Marketers, Inc.*, 695 N.E. 2d 853, 859 (Ill. 1998).

The Court should decline to read causes of action into the Illinois, Massachusetts, Michigan, Pennsylvania, and South Carolina statutes that the state legislatures did not enact.

D.     **Plaintiffs' Claims Under the Consumer Protection Laws of California, Massachusetts, Michigan, and Puerto Rico Fail for Additional Reasons.**

**California.**  Plaintiffs do not dispute that the California Supreme Court has repeatedly held the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, creates a private cause of action for *only* injunctive relief or restitution, which the Court has explained means the return of money to persons who had an ownership interest in the property.  *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 944–49 (Cal. 2003).  And Plaintiffs do not argue that they have stated a claim for restitution from PAN and, indeed, they have not.  [ECF 53 at 39–40].  Accordingly, the UCL claim should be dismissed as to PAN.  *See Feitelberg v. Credit Suisse First Boston, LLC*, 36 Cal. Rptr. 3d 592, 609–10 (Cal Ct. App. 2005) (affirming dismissal of UCL claim that did not state a claim for restitution); *Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 225–27 (Cal. Ct. App. 2005) (same).

**Massachusetts.**  Plaintiffs agree that "the center of gravity of the circumstances that give rise to the claim [must be] primarily and substantially within" Massachusetts.  *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 781 N.E. 2d 787, 799 (Mass. 2003); Mass. Gen. Laws ch. 93A, § 11.  "In making that determination, a court should focus solely on the actionable conduct said to give rise to the violation; other conduct, no matter where it takes place, may not be considered."  *Monahan Prods. LLC v. Sam's E., Inc.*, 463 F. Supp. 3d 128, 151 (D. Mass. 2020).  PAN is not alleged to have acted "primarily" in Massachusetts.  In response, Plaintiffs contend that "Assignors' data identified one or more purchases of the Subject Pfizer Drugs in the State of Massachusetts," and therefore the sale, purchase, and reimbursement as well as the use of mail and wires must have occurred there.  [ECF 53 at 40–41].  However, a "place of injury within Massachusetts" is not sufficient to find that conduct occurred "primarily and substantially" there.  *Monahan Prods.*, 463 F. Supp. 3d at 152 (cleaned up).  "Where the allegedly unfair sales occurred

throughout the country, and where only a very small percentage of the number of sales and revenues generated was centered in Massachusetts, it is clear that the center of gravity—if there is a demonstrable one—is elsewhere." *New Eng. Gen-Connect, LLC v. US Carburetion, Inc.*, 2019 WL 1332891, at *2 (D. Mass. Mar. 25, 2019).

**Michigan.** As PAN explained, the Complaint fails to allege facts that state a claim under any of the 38 different types of "[u]nfair, unconscionable, or deceptive methods, acts, or practices" under Mich. Comp. Laws § 445.903(1)(a)–(ll). Plaintiffs do not argue that the Complaint stated a claim, but merely assert that PAN did not cite a case requiring that it identify the provision violated. [ECF 53 at 42]. The failure to allege facts that state a claim is grounds for dismissal, as is the failure even to identify the statutory provision that was allegedly was violated. *See Abney v. Dolgencorp, LLC*, 2022 WL 210451, at *6 (E.D. Mich. Jan. 24, 2022) (holding that Rule 8 requires a plaintiff to "indicate which of the MCPA's 37 provisions [his] claim is asserted under").

**Puerto Rico.** There is no private right of action under the statute cited in the Complaint, but Plaintiffs assert that they can fix this problem by asserting a claim under Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws § 5141. [ECF 53 at 44 n.48]. This would be no cure. A claim under Article 1802 would be barred by the applicable one-year statute of limitations. *See Rodriguez v. Suzuki Motor Corp.*, 570 F.3d 402, 406 (1st Cir. 2009).

## IV.    COUNT IV (UNJUST ENRICHMENT) SHOULD BE DISMISSED.

Plaintiffs do not substantively respond to PAN's arguments that the Complaint fails to state a claim for unjust enrichment against PAN. [ECF 53 at 44]. Instead, they resort to name-calling, cite to PAN's unrelated settlement with the Government, and fallaciously assert that PAN's "executives enjoyed millions of dollars in compensation." *See* Compl. ¶ 113 (alleging that in 2011, PAN paid its President $89,000, and in 2016 paid a later President $377,000); [ECF 52 at 43–

24

44].[16]  Count IV should be dismissed for failure to state a claim.

## V.      COUNT V (FLORIDA RICO) SHOULD BE DISMISSED.

Florida's RICO claim fails for the reasons above.  *See* [ECF 50-1 at 42–44].  Indeed, a Florida district court recently dismissed Plaintiffs' Florida RICO claim in a copay assistance case due to lack of proximate cause.  *See Caring Voice Coal., Inc.*, 2022 WL 3155035, at *14–15.

In response, Plaintiffs argue that the indirect purchaser rule should not apply to the Florida RICO claim.  [ECF 53 at 45 n.52].  As explained, Florida's RICO statute is a "cognate" to the federal statute, as Plaintiffs concede, [*id.* at 44], and federal RICO principles apply to Florida's law.  *See* [ECF 50-1 at 42–43].  Thus, the indirect purchaser rule bars the Florida RICO claim.[17] Plaintiffs also claim that Defendants committed insurance fraud by causing pharmacies to "submit claims that were tainted by violations of the AKS," in violation of Fla. Stat. § 817.234(1)(a)(1). [ECF 53 at 45].  For the reasons discussed above, this claim has not been alleged with particularity, and the theory is unavailing.  *See* [ECF 50-1 at 43–44].

## CONCLUSION

For the foregoing reasons and those set forth in its opening brief, the Complaint should be dismissed with prejudice as to Defendant Patient Access Network Foundation.

Dated:  December 20, 2022                  Respectfully submitted,

                                           */s/ Jesse A. Witten*
                                           Jesse A. Witten (#443858)
                                           Mark H.M. Sosnowsky (#979960)

---

[16] Elsewhere, Plaintiffs wrongly assert that PAN's management "reportedly paid themselves" over $2.8, $3, and $3.7 million in compensation.  [ECF 52 at 11, 12, 15 (citing PAN's annual Form 990 Tax Returns)].  As the Form 990s make clear, these figures are for *total salary, compensation and benefits paid to all employees of PAN*, not just compensation paid to executives.

[17] Plaintiffs' effort to distinguish *Mack v. Bristol-Myers Squibb Co.* fails.  *Mack* noted that while states can allow antitrust claims by indirect purchasers, the Florida legislature determined not to do so in the Florida Antitrust Act. 673 So.2d 100, 107–08 (Fla. App. 1996).  *Mack* does not suggest that the indirect purchaser rule is inapplicable to Florida RICO and does not address that statute.

Alison M. Agnew (#1047166)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K St., N.W., Suite 1100
Washington, D.C. 20005
Phone: (202) 842-8800
Fax: (202) 230-5354
Jesse.Witten@faegredrinker.com
Mark.Sosnowsky@faegredrinker.com
Alison.Agnew@faegredrinker.com

*Attorneys for Defendant*
*Patient Access Network Foundation*

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on December 20, 2022, the foregoing

Reply Brief in Support of Motion to Dismiss was served on all counsel of record through the

CM/ECF system, which will send notification of the filing to all counsel of record.

_/s/ Jesse A. Witten_
Jesse A. Witten