## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware series limited liability company; MSP Recovery Claims PROV, Series LLC, a Delaware series limited liability company; MSPA CLAIMS I, LLC, a Florida limited liability company; MAO-MSO RECOVERY II, LLC, Series PMPI, a segregated series of MAO-MSO RECOVERY II, LLC, a Delaware series limited liability company; and MSP RECOVERY CLAIMS SERIES 44, LLC, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>PFIZER, INC.; ADVANCED CARE SCRIPTS; and PATIENT ACCESS NETWORK FOUNDATION,<br><br>       Defendants. | **CLASS ACTION**<br>Case No. 1:22-cv-01419-DLF<br>Hon. Dabney L. Friedrich<br><br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY IN SUPPORT OF DEFENDANT PFIZER INC.'S
## MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000

*Attorneys for Defendant Pfizer Inc.*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.   The Complaint Should Be Dismissed Because All of its Factual Allegations of
     Pfizer's Alleged Wrongdoing Derive From a Settlement Agreement ............................... 2

     A.   Plaintiffs Cannot Rely on Factual Allegations of Wrongdoing Based Wholly on
          a No-Admission Settlement Agreement to State a Claim ............................................... 2

     B.   The Court Should Strike the Allegations from the Settlement Agreement ..................... 5

II.  Plaintiffs Lack Article III Standing ..................................................................................... 7

III. The RICO Claims Fail Because Plaintiffs' Assignors Did Not Purchase Any Drugs
     from Pfizer and Thus Lack Standing to Assert RICO Claims, and Plaintiffs Also Fail
     to State a Claim ..................................................................................................................... 9

     A.   Plaintiffs Lack Standing Under the Indirect Purchaser Rule ......................................... 9

     B.   Plaintiffs Fail to State RICO Claims ........................................................................... 14

          1.   Plaintiffs Fail to Plead Proximate Cause .............................................................. 14

          2.   Plaintiffs Fail to Adequately Plead a Predicate Act .............................................. 17

IV.  Plaintiffs' State Law Claims Should Be Dismissed ........................................................... 19

     A.   Plaintiffs' Assignors Lack Standing to Assert Claims Under State Laws Where
          They Are Not Residents and Were Not Injured ............................................................ 19

     B.   Plaintiffs' State Law Consumer Protection Claims Fail ............................................... 21

     C.   Plaintiffs' Unjust Enrichment Claim Fails ................................................................... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Am. Fed'n of State County & Mun. Employees v. Ortho-McNeil-Janssen Pharms., Inc.*,
    2010 WL 891150 (E.D. Pa. 2010) .......................................................................... 24

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................... 13

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019) ........................................................................................... 10

*Aston v. Johnson & Johnson*,
    248 F. Supp. 3d 43 (D.D.C. 2017) ........................................................................ 21

*Banner Health v. Burwell*,
    55 F. Supp. 3d 1 (D.D.C. 2014) ............................................................................ 19

*Brady v. Wal-Mart Stores, Inc.*,
    531 F.3d 127 (2d Cir. 2008) .................................................................................... 5

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ................................................................................ 13, 14, 15, 18

*Carter v. Univ. of Conn.*,
    264 F. App'x 111 (2d Cir. 2008) .......................................................................... 23

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
    436 Mass. 53 (2002) .............................................................................................. 23

*Cobell v. Norton*,
    377 F. Supp. 2d 4 (D.D.C. 2005) ........................................................................... 4

*Doe v. Benoit*,
    2020 WL 11885578 (D.D.C. June 29, 2020) ......................................................... 6

*Dooley v. United Techs. Corp.*,
    803 F. Supp. 428 (D.D.C. 1992) .......................................................................... 17

*F.T.C. v. Mylan Lab'ys, Inc.*,
    62 F. Supp. 2d 25 (D.D.C.) ................................................................................... 24

*Fed. Info. Sys., Corp. v. Boyd*,
    753 F. Supp. 971 (D.D.C. 1990) .......................................................................... 17

*Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
    873 F. Supp. 2d 288 (D.D.C. 2012) .......................................................................... 17

*Glasgow v. Camanne Mgmt. Inc.*,
    261 A.3d 208 (D.C. 2021) ........................................................................................ 24

*Grant Mfg. & Alloying, Inc. v. Recycle Is Good, LLC*,
    2011 WL 6015663 (E.D. Pa. Dec. 1, 2011) .............................................................. 4

*Hallmark v. Cohen & Slamowitz, LLP*,
    283 F.R.D. 136 (W.D.N.Y. 2012) ............................................................................. 4

*Harris Cnty., Tex. v. Eli Lilly & Co.*,
    2020 WL 5803483 (S.D. Tex. Sept. 29, 2020) ....................................................... 12

*Harris Cnty., Tex. v. Eli Lilly and Co.*,
    2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ........................................................... 14

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) ........................................................................................... 11, 15

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
    284 F. Supp. 2d 15 (D.D.C. 2003) ...................................................................... 23, 24

*HSN Nordbank AG v. RBS Holdings USA Inc.*,
    2015 WL 1307189 (S.D.N.Y. Mar. 23, 2015) .......................................................... 5

*Humana, Inc. v. Indivior Inc.*,
    2021 WL 3101593 (E.D. Pa. July 22, 2021) ........................................................... 10

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................................. 20

*In re EpiPen Direct Purchaser Litig.*,
    2022 WL 1017770 (D. Minn. Apr. 5, 2022) ........................................................... 19

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ................................................................................. 6

*In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*,
    2011 WL 3702453 (S.D. Cal. Aug. 22, 2011) .......................................................... 7

*In re Nifedipine Antitrust Litig.*,
    335 F. Supp. 2d 6 (D.D.C. 2004) ....................................................................... 13, 14

*In re OSB Antitrust Litig.*,
    2007 WL 2253425 (E.D. Pa. Aug. 3, 2007) ........................................................... 20

iv

*In re Packaged Seafood Prod. Antitrust Litig.*,
 2017 WL 35571 (S.D. Cal. Jan. 3, 2017)...........................................................7

*In re Platinum and Palladium Commodities Litig.*,
 828 F. Supp. 2d 588 (S.D.N.Y. 2011) ..............................................................3

*In re Processed Egg Prod. Antitrust Litig.*,
 881 F.3d 262 (3d Cir. 2018) ............................................................................10

*In re Rezulin Products Liab. Litig.*,
 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ............................................................20

*In re Subpoena Issued to Commodity Futures Trading Comm'n*,
 370 F. Supp. 2d 201 (D.D.C. 2005)..................................................................4

*In re Tableware Antitrust Litig.*,
 363 F. Supp. 2d 1203 (N.D. Cal. 2005) ...........................................................6

*In re Takata Airbag Prod. Liab. Litig.*,
 524 F. Supp. 3d 1266 (S.D. Fla. 2021) ...........................................................12

*In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
 2021 WL 2853069 (E.D. La. July 8, 2021) .....................................................15

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
 546 F. Supp. 3d 1216 (S.D. Fla. 2021) ...........................................................11

*In re: McCormick & Co., Inc.*,
 217 F. Supp. 3d 124 (D.D.C. 2016)................................................................20

*Int'l Broth. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*,
 196 F.3d 818 (7th Cir. 1999) ..........................................................................11

*Intelect Corp. v. Cellco P'ship GP*,
 160 F. Supp. 3d 157 (D.D.C. 2016).................................................................25

*Johns v. Bayer Corp.*,
 2010 WL 476688 (S.D. Cal. Feb. 9, 2010).......................................................3

*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*,
 870 A.2d 58 (D.C. 2005) ................................................................................25

*Kerby v. Mortg. Funding Corp.*,
 992 F. Supp. 787 (D. Md. 1998 ......................................................................17

*Leading Mfg. Sols., LP v. Hitco, Ltd.*,
 2017 WL 1336939 (S.D. Cal. Mar. 24, 2017) ..................................................4

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976) ............................................................................ 3

*Makuch v. Fed. Bureau of Investigation*,
    2000 WL 915767 (D.D.C. Jan. 7, 2000) .......................................................... 6

*McCarthy v. Recordex Serv., Inc.*,
    80 F.3d 842 (3d Cir. 1996) .................................................................... 11, 12

*Molock v. Whole Foods Mkt., Inc.*,
    297 F. Supp. 3d 114 (D.D.C. 2018) ............................................................. 20

*MSP Recovery Claims, Series LLC v. Abbott Labs.*,
    2021 WL 2177548 (D.N.J. May 28, 2021) ............................................ 10, 23

*MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*,
    2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021) ............................................... 8

*MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*,
    2022 WL 17220647 (C.D. Cal. Oct. 20, 2022) ........................................... 18

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
    2022 WL 3155035 (S.D. Fla. July 21, 2022) .............................................. 13

*MSP Recovery Claims, Series LLC v. Endurance Am. Ins. Co.*,
    2021 WL 706225 (S.D. Fla. Feb. 23, 2021) ................................................. 9

*MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc.*,
    2022 WL 3585782 (D. Conn. Aug. 22, 2022) .............................................. 8

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
    2019 WL 1418129 (D.N.J. Mar. 29, 2019) ...................................... 11, 12, 13

*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
    2020 WL 831578 (D.N.J. Feb. 20, 2020) .............................................. 23, 24

*N'Jai v. U.S. Dep't of Educ.*,
    2021 WL 1209281 (D.D.C. Mar. 31, 2021) ................................................ 19

*NAACP Legal Defense Fund and Educational Fund, Inc. v. U.S. Department of Justice*,
    612 F. Supp. 1143 (D.D.C. 1985) ................................................................ 4

*Neuhaus v. DeCholnoky*,
    280 Conn. 190 (2006) ................................................................................. 22

*Newton v. Tyson Foods, Inc.*,
    207 F.3d 444 (8th Cir. 2000) ..................................................................... 12

*Oceanic Expl. Co. v. ConocoPhillips, Inc.*,
  2006 WL 2711527 (D.D.C. Sept. 21, 2006) ........................................................................... 25

*Ramirez v. STi Prepaid LLC*,
  644 F. Supp. 2d 496 (D.N.J. 2009) ...................................................................................... 20

*Sandza v. Barclays Bank PLC*,
  51 F. Supp. 3d 94 (D.D.C. 2015) ........................................................................................ 19

*Serv. Emps. Int'l Union Health and Welfare Fund v. Philip Morris Inc.*,
  249 F.3d 1068 (D.C. Cir. 2001) ..................................................................................... 15, 16

*Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*,
  221 F. Supp. 3d 227 (D.R.I. 2016) ...................................................................................... 20

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*,
  980 F.3d 109 (D.C. Cir. 2020) .............................................................................................. 2

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
  171 F.3d 912 (3d Cir. 1999) ................................................................................................ 12

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) ........................................................................................ 11, 12

*U.S. ex rel. Strunck v. Mallinckrodt Ard LLC*,
  2020 WL 362717 (E.D. Pa. Jan. 22, 2020) ........................................................................... 6

*U.S. v. Babaria*,
  775 F.3d 593 (3d Cir. 2014) ................................................................................................ 22

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v.
Teikoku Pharma USA, Inc.*,
  74 F. Supp. 3d 1052 (N.D. Cal. 2014) ................................................................................. 23

Defendant Pfizer Inc. ("Pfizer") respectfully submits this reply in support of its Rule 12(b)(6) and Rule 12(f) motion to dismiss the complaint filed by plaintiffs against Pfizer, Advanced Care Scripts ("ACS"), and Patient Access Network Foundation ("PAN" or "PANF") (collectively, "defendants") and, in so doing, to strike certain allegations contained therein.

## PRELIMINARY STATEMENT

In the opening brief, Pfizer demonstrated that the complaint should be dismissed because its allegations of wrongdoing entirely derive from a no-admission settlement agreement, while the claims also suffer from a number of additional, independent defects. Plaintiffs' opposition attempts to muddle the issues but fails to refute any of Pfizer's arguments.

As to Pfizer's threshold showing that the complaint should be dismissed because it merely recycles allegations from the settlement agreement, plaintiffs do not engage with Pfizer's cases showing that such an approach to pleading violates a plaintiff's "nondelegable responsibility" to conduct its own factual investigation. Nor do plaintiffs refute Pfizer's showing that the complaint relies on the settlement agreement for its allegations of wrongdoing, and that the remaining allegations cannot support any claim against Pfizer. Plaintiffs' other arguments rely on inapposite cases that do not address whether a complaint that relies on such allegations is subject to dismissal. This is reason enough to dismiss the complaint in its entirety.

Plaintiffs also lack Article III standing, and their arguments to the contrary fail to show that the quoted excerpts of assignment agreements (which is all they have provided) satisfy their burden of demonstrating standing. Separately, plaintiffs lack standing to assert RICO claims for an independent reason—namely, because plaintiffs' assignors are not direct purchasers of the drugs at issue, the RICO claims are barred under the indirect purchaser rule. As a factual matter, plaintiffs concede that their assignors are not direct purchasers. Legally, they have no rebuttal to

Pfizer's showing that *every* court of appeals to consider the issue has held that the rule applies to civil RICO claims.  And as discussed below, plaintiffs' RICO claims and state law claims are independently subject to dismissal for myriad other reasons.

Plaintiffs' opposition includes a lengthy recitation of facts not pleaded in the complaint and over 2,000 pages of new exhibits, including funding reports, tax forms, documents related to charitable donations made by Pfizer to PAN, financial statements, and documents related to Pfizer's request for an advisory opinion from the Office of the Inspector General, among other things.  None of the new purported facts or exhibits includes material probative of any alleged wrongdoing by Pfizer.  Regardless, to the extent the opposition incorporates new facts that are not in the complaint, they are of no moment, as it "is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020).[1]

## ARGUMENT

I. **The Complaint Should Be Dismissed Because All of its Factual Allegations of Pfizer's Alleged Wrongdoing Derive From a Settlement Agreement**

A. **Plaintiffs Cannot Rely on Factual Allegations of Wrongdoing Based Wholly on a No-Admission Settlement Agreement to State a Claim**

Pfizer's opening brief demonstrated that plaintiffs impermissibly rely on a no-admission settlement agreement between Pfizer and the DOJ for all of the complaint's factual allegations that imply any wrongdoing by Pfizer.  Br. at 10-14.  Plaintiffs' efforts to avoid this conclusion—reached by federal courts around the country, including the Second Circuit, when faced with similar allegations—fail.

---

[1] Pfizer also joins in the arguments made in the replies filed by defendants ACS and PAN.

*First*, plaintiffs largely ignore the cases holding that "borrowed" allegations like those in the complaint here violate a plaintiff's nondelegable responsibility under the Federal Rules to conduct a reasonable factual investigation of its own claims before filing a complaint. *Id*. at 13-14 & n.4 (collecting cases). Plaintiffs try to distinguish only one case—*Connetics*—on its facts by arguing that the complaint here pleads *other* factual allegations beyond those derived from the settlement agreement. Opp. at 25-26 & n.53. But the complaint fails because "the entirety of [plaintiffs'] claims of *wrongdoing* are based on factual allegations made in, or inferred from" a prior no-admission settlement. *Johns v. Bayer Corp*., 2010 WL 476688, at *2-4 (S.D. Cal. Feb. 9, 2010). As explained in Pfizer's opening brief, the fact that the complaint (and plaintiffs' opposition) also contains lengthy recitations of entirely innocuous facts, such as the amounts of charitable donations Pfizer made to PAN (Opp. at 26), is irrelevant to whether the complaint states a claim against Pfizer. Br. at 8-9, 11.[2]

*Second*, plaintiffs' focus on FRE 408 (Opp. at 23-25) is misleading. For one thing, *Lipsky v. Commonwealth United Corp.* does not reference FRE 408 *at all*. 551 F.2d 887, 893-94 (2d Cir. 1976) (discussing FRE 410). And courts following *Lipsky* find that complaints are deficient where they rely entirely on no-admission settlement agreements "to prove liability"— which is exactly what plaintiffs are seeking to do here. *In re Platinum and Palladium Commodities Litig*., 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011). Plaintiffs' reliance on *NAACP*

---

[2] Plaintiffs misleadingly suggest that Pfizer's argument "depends on the premise that the Complaint is *entirely* derived from the [settlement agreement] and lacks *any* independent factual allegations." Opp. at 25. Not so. Pfizer argued that the complaint should be dismissed because plaintiffs "merely cite[] language from a settlement without offering further factual allegations *supporting a finding of liability*." Br. at 10-11 (emphasis added) (internal quotation marks omitted); *compare* Opp. at 23 (quoting that passage from Pfizer's brief, but omitting the phrase "supporting a finding of liability").

*Legal Defense Fund and Educational Fund, Inc. v. U.S. Department of Just*ice, 612 F. Supp. 1143, 1146 (D.D.C. 1985), and the other cases cited in their FRE 408 discussion (Opp. at 23-24) fails for a similar reason:  none addresses the sufficiency of a complaint that relies on a no-admission settlement for all of its allegations of wrongdoing.[3]  Although there is no controlling authority in this Circuit addressing that issue, courts around the country routinely dismiss such complaints.  Br. at 10-13.[4]

> *Third*, plaintiffs' purported reasons for including the settlement-related allegations are meritless.  Opp. at 24-25.  As a threshold matter, it is clear from the complaint that the manifest purpose of the allegations derived from the settlement agreement is to imply Pfizer's liability. *See, e.g.*, Compl. ¶ 178 (alleging that "the conduct set forth in the Pfizer settlement shows that PANF, ACS, and Pfizer had a relationship and communicated information important to their Scheme through the mail and wires to profit illegally").  And plaintiffs' opposition *confirms* that plaintiffs seek to use the allegations from the settlement agreement for that purpose, as they

---

[3] *NAACP* did not hold that FRE 408 does not apply "to pleadings," as plaintiffs suggest (Opp. at 23), but instead held that the rule did not preclude disclosure of certain documents under FOIA. 612 F. Supp. at 1146-47.  The other cases cited by plaintiffs are likewise unhelpful to them.  *See, e.g.*, *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 208-12 (D.D.C. 2005) (granting motion to compel discovery as to certain documents and rejecting argument that FRE 408 precluded that discovery).  Indeed, in *Grant Mfg. & Alloying, Inc. v. Recycle Is Good, LLC*, 2011 WL 6015663 (E.D. Pa. Dec. 1, 2011), the court *acknowledged* that "courts in this District have applied Rule 408 to strike allegations in pleadings." *Id.* at *3 (collecting cases) (cited by Opp. at 24).

[4] Plaintiffs' cases are inapposite because they do not address the circumstances that were present in *Lipsky* and its progeny and are present here.  *Leading Mfg. Sols., LP v. Hitco, Ltd.*, 2017 WL 1336939, at *2-3 (S.D. Cal. Mar. 24, 2017) (addressing whether information gained in settlement discussions between the parties could be used for certain purposes and acknowledging that "where a complaint alleges what was said during settlement discussions in an effort to establish liability, no admissible evidence could support those allegations"); *Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136, 140 (W.D.N.Y. 2012) (same).  *Cobell v. Norton*, 377 F. Supp. 2d 4 (D.D.C. 2005) is irrelevant because it concerned a motion to strike an evidentiary submission, not a motion to dismiss a complaint.

expressly invite the Court to make inferences of wrongdoing based on the settlement agreement. *See* Opp. at 29 (arguing that "the allegations of the DOJ's multi-million-dollar settlement with Pfizer, ACS, and PAN, underscore the plausibility that Defendants' conduct violated the AKS, it supports the assertion that Defendants misled the OIG into endorsing its operations . . . and it makes it 'more plausible' that Defendants formed an enterprise and each participated in the scheme to defraud third-party payors").

### B.     The Court Should Strike the Allegations from the Settlement Agreement

As demonstrated in the opening brief and discussed above, plaintiffs rely on the no-admission settlement to try to make their allegations of Pfizer's wrongdoing appear "plausible."  For this reason, the allegations here are readily distinguishable from those in plaintiffs' cases and should be stricken.  Opp. at 27-28.  *See, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008) (consent decree admitted at trial for limited purpose of demonstrating awareness of obligations under the ADA, not to infer liability); *HSN Nordbank AG v. RBS Holdings USA Inc.*, 2015 WL 1307189, at *4 (S.D.N.Y. Mar. 23, 2015) (plaintiffs could reference forensic review of loans described in a complaint to demonstrate the quality of the loans, not liability).[5]

---

[5] *See also, e.g.*, *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, 2009 WL 3540786, at *3 (E.D. Pa. 2009) (declining to strike references in two paragraphs to settlement negotiations offered to show willful and deliberate conduct, not liability); *McAndrews Law Offices v. School Dist. of Phila.*, 2007 WL 515412, at *2-3 (E.D. Pa. Feb. 9, 2007) (no indication that exhibits were introduced to support all allegations of liability); *Ocean Garden Prod. Inc. v. Blessings Inc.*, 2019 WL 396873, at *1 (D. Ariz. Jan. 29, 2019) (declining to strike allegations that were not clearly seeking to imply liability); *Berry v. Lee*, 428 F. Supp. 2d 546, 563-64 (N.D. Tex. 2006) (same).  Plaintiffs' other cases are inapposite because they arose in circumstances distinguishable from those present in *Lipsky* and here.  *See, e.g.*, *Rodriguez v. City of New York*, 2016 WL 3264166, at *2 (E.D.N.Y. June 13, 2016) (distinguishing *Lipsky* because claims against municipalities require a showing of an official policy beyond a single case).

In fact, courts in this Circuit have discretion to strike allegations on the basis that they are "immaterial," and motions to strike are only disfavored "so long as the complaint states a claim and is otherwise legally sufficient." *Makuch v. Fed. Bureau of Investigation*, 2000 WL 915767, at *1 (D.D.C. Jan. 7, 2000).  Moreover, as this Court and plaintiffs' own cases recognize, a showing of prejudice is not required to strike pleadings if one of the bases in Rule 12(f) is met. *See Doe v. Benoit*, 2020 WL 11885578, at *3, *7 (D.D.C. June 29, 2020) (Friedrich, J.); *see also Makuch*, 2000 WL 915767, at *2 ("Federal Rule of Civil Procedure 12(f) does not by its terms require that matters be prejudicial to be stricken.") (cited by Opp. at 27).

*U.S. ex rel. Strunck v. Mallinckrodt Ard LLC*, 2020 WL 362717 (E.D. Pa. Jan. 22, 2020) is likewise inapposite.  There, the defendant moved to strike one paragraph from the complaint that discussed "settlements with other manufacturers" on the ground that the settlements related to "*other* drug companies."  *Id.* at *7.  The court rejected that argument on the basis that the defendant itself had based "much of its argument" for dismissal on "HHS OIG advisory opinions" that were issued to other entities.  *Id.*  That holding has no relevance here because Pfizer has not argued for dismissal based on such advisory opinions.[6]  And plaintiffs' reliance on *In re Tableware Antitrust Litigation* and other California cases that rely on it (Opp. at 28 n.56) is misplaced because, as the court explained in *Tableware*, "[s]imply saying 'me too' after a governmental investigation does not state a claim."  363 F. Supp. 2d 1203, 1205-06 (N.D. Cal. 2005) (acknowledging that defendants had demonstrated that the complaint would have been deficient had it been subject to Rule 9(b) instead of Rule 8).  In fact, plaintiffs' cases support

---

[6] Plaintiffs misleadingly cite language from the *dissent* in *In re Musical Instruments & Equip. Antitrust Litigation*, 798 F.3d 1186 (9th Cir. 2015).  Opp. at 29.  The case's actual holding—that the plaintiffs could not rely on an FTC investigation to allege a conspiracy under the Sherman Act—supports Pfizer's position.  798 F.3d at 1196.

Pfizer's argument—which plaintiffs do not seriously attempt to refute, as discussed above—that a plaintiff is obligated to conduct its own investigation prior to filing a complaint, rather than rely on a settlement. *See, e.g.*, *In re Packaged Seafood Prod. Antitrust Litig.*, 2017 WL 35571, at *8 (S.D. Cal. Jan. 3, 2017) (quoting *Tableware* for the proposition that a plaintiff must "undertake his own reasonable inquiry and frame his complaint with allegations of his own design"); *In re Nat'l Ass'n of Music Merchs., Musical Instruments & Equip. Antitrust Litig.*, 2011 WL 3702453, at *1 (S.D. Cal. Aug. 22, 2011) (same).  Here, because the complaint relies "solely or too heavily" on a prior government settlement, it fails to meet plaintiffs' Rule 11 obligations.  *Packaged Seafood*, 2017 WL 35571, at *8.

## II.    Plaintiffs Lack Article III Standing

The opening brief explained why the complaint's allegations are insufficient to demonstrate Article III standing (Br. at 16-21) and plaintiffs' opposition does not show otherwise.  As an initial matter, plaintiffs' attempt to distinguish the cases cited by Pfizer involving the same MSP plaintiffs because those cases involved the Medicare Secondary Payer Act ("MSPA") is unavailing.  Opp. at 29-30.  Plaintiffs offer no explanation of why the type of alleged claim by an assignor—seeking recovery from a party that was allegedly actually responsible for the insurance obligations under the MSPA (in the other cases) or seeking recovery for payments made pursuant to obligations under the Medicare program (as here)—should affect the Article III standing inquiry.  That is because no plausible distinction exists.  Indeed, courts evaluating whether MSP plaintiffs have standing in connection with claims brought under the MSPA have required them to plead adequate factual allegations similar to what plaintiffs must show here.  Namely, plaintiffs must demonstrate that (i) each assignor made co-payments for the Pfizer drugs at issue on behalf of Medicare enrollees; (ii) such co-payments were made as a result of the alleged scheme; (iii) each assignor assigned its claim

7

related to the allegedly improper co-payment to one of the named plaintiffs or a designated Series LLC of a named plaintiff; and (iv) the named plaintiffs have the right to sue on behalf of the designated Series LLC that received the assignment.  *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *4, *6 (S.D.N.Y. Mar. 26, 2021); *see also id.* at *4 n.4 (collecting cases in which "other courts have similarly described [MSP's] injury in other cases brought by [MSP] or its affiliated entities").  As explained in the opening brief, plaintiffs' complaint fails to establish standing for multiple reasons.

*First*, while Pfizer is unaware of any controlling caselaw in this Circuit on whether plaintiffs may sue on behalf of a designated series, multiple federal courts have found that these MSP plaintiffs lack standing to do so.  Br. at 17-18.  This Court should hold the same.  Plaintiffs claim that this position has been "soundly rejected" (Opp. at 31), but their own authority confirms that there is (at best) a "split of federal court authority over this thorny Delaware state law issue."  *See MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc.*, 2022 WL 3585782, at *5 (D. Conn. Aug. 22, 2022) (quoting *AIG Prop. Cas. Co.*, 2021 WL 1164091, at *11 (expressing "grave doubts about the merits of [MSP's] argument" on standing)).

*Second*, plaintiffs' continued reliance on undisclosed data purportedly reflecting their assignors' co-payment history is misplaced because plaintiffs offer no explanation of how *any* records of payment, by themselves, could possibly show that such payments were made *as a result of* the purported scheme.  Plaintiffs' opposition does not address this, instead merely reciting the same insufficient allegations about the data that are in the complaint.  Opp. at 31-32.

*Third*, despite inundating the Court with over 2,000 pages of exhibits, plaintiffs tellingly have *still* not provided Pfizer or the Court with a complete version of any of the assignment agreements.  Plaintiffs' suggestion that the language from the excerpted agreements "could not

be clearer" (Opp. at 32) holds little water, given that they have not provided the entire agreements.  As demonstrated in the opening brief, plaintiffs' cherry-picked portions of the assignment agreements are insufficient to demonstrate valid assignments.  Br. at 20.  The excerpts simply do not allow the Court to determine whether plaintiffs' claims fall within the assignments.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. Endurance Am. Ins. Co.*, 2021 WL 706225, at *3 (S.D. Fla. Feb. 23, 2021) (plaintiffs' assertions of valid assignments without alleging facts to show that their claims were not subject to exclusions in the agreements were "legal conclusions of contract interpretation" that the court would not accept as true).

**III.    The RICO Claims Fail Because Plaintiffs' Assignors Did Not Purchase Any Drugs from Pfizer and Thus Lack Standing to Assert RICO Claims, and Plaintiffs Also Fail to State a Claim**

Pfizer established in the opening brief that plaintiffs' RICO claims should be dismissed because plaintiffs lack standing under the indirect purchaser rule and independently because they fail to adequately plead proximate cause or any "predicate act" under RICO.  Br. at 21-31. Plaintiffs' arguments to the contrary are unavailing.

**A.    Plaintiffs Lack Standing Under the Indirect Purchaser Rule**

Plaintiffs lack standing under the indirect purchaser rule because their assignors did not purchase any drugs directly from Pfizer.  Br. at 21-23.  Plaintiffs' response (ACS Opp. at 21-26) fails because they do not dispute that their assignors never purchased the medications in question from Pfizer, and their arguments about the indirect purchaser rule are wrong as a matter of law.

*First*, plaintiffs do not dispute that their assignors are not direct purchasers from Pfizer. In fact, plaintiffs *concede* that the assignors are not purchasers, but rather "entities that provide health insurance coverage under Medicare."  Opp. at 36.  And in connection with plaintiffs' argument that they have standing to pursue their state law claims, they argue that the relevant "purchases were made" by *individual consumers* in the states at issue, which is also what is

alleged in the complaint.  *Id.* at 39-40; *see also* Compl. ¶ 139 (alleging that Defendants' conduct

"caused [the assignors'] *beneficiaries to purchase* the Subject Pfizer Drugs"); *id.* ¶ 340 (alleging

that "Plaintiffs' analysis of its Assignors' data identified one or more *purchases* of the Subject

Pfizer Drugs"—i.e., a purchase by an individual beneficiary of one of the assignors—in certain

states) (emphases added).

Although plaintiffs suggest that their injuries are not "pass-through injury claims" and

thus are not subject to the indirect purchaser rule (ACS Opp. at 26), they do not refute the

factually analogous cases that Pfizer cited holding that other similarly situated plaintiffs' claims

were barred under the rule.  *See MSP Recovery Claims, Series LLC v. Abbott Labs.*, 2021 WL

2177548, at *8 (D.N.J. May 28, 2021) (holding that the plaintiffs' RICO claims were "barred by

the indirect purchaser rule" because their alleged injury was "too far downstream from the

conduct of Defendants"); *Humana, Inc. v. Indivior Inc.*, 2021 WL 3101593, at *9 (E.D. Pa. July

22, 2021) (holding that plaintiff insurers who had "reimbursed prescriptions for [drugs] that were

already purchased . . . have suffered only 'passed on' injuries, thereby depriving them of

standing to pursue their alleged RICO claims"), *aff'd* Nos. 21-2573, 21-2574 (3d Cir. Dec. 15,

2022).  Plaintiffs' cases are irrelevant because they concern *direct* purchasers.  *See Apple Inc. v.

Pepper*, 139 S. Ct. 1514, 1521 (2019) (plaintiffs are "direct purchasers from Apple"); *In re

Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 275-76 (3d Cir. 2018) (no dispute that

plaintiffs are "direct purchasers").[7]

Therefore, the only question is whether the indirect purchaser rule applies to civil RICO

claims.  Contrary to plaintiffs' mischaracterization of the law (ACS Opp. at 21-24), the Supreme

---

[7] Although plaintiffs cursorily assert that "these are not indirect purchaser claims" (ACS Opp. at
26), that contention is belied by the fact that plaintiffs have *conceded* that they are not
themselves purchasers of the drugs at issue, as explained above.

Court has never rejected the indirect purchaser rule in the RICO context, whether in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992), or any other case.  Indeed, a district court recently rejected these plaintiffs' same arguments about *Holmes*: "Nothing in *Holmes* undercuts the voluminous federal jurisprudence holding that . . . the indirect purchaser rule applies to RICO actions with the same force as in the antitrust context."  *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *15 (D.N.J. Mar. 29, 2019).  In fact, "*Holmes* explicitly held that federal jurisprudence interpreting antitrust principles govern[s] RICO claims because Congress modeled RICO's civil action provision on a substantially similar provision in the Clayton Act."  *Id.* at *14 (citing *Holmes*, 503 U.S. at 267-68).

Plaintiffs' argument is further belied by the fact that *all* of the courts of appeals to have addressed the issue relied on *Holmes* in holding that the indirect purchaser rule *does* apply to civil RICO claims.  Br. at 21-22; *see McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 855 (3d Cir. 1996) ("[A]ntitrust standing principles apply equally to allegations of RICO violations.") (citing *Holmes*, 503 U.S. at 270); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613-14 (6th Cir. 2004) (explaining that the Sixth Circuit "has hewed to the same path before *Holmes* and since in denying RICO standing to parties who suffer derivative or passed-on injuries"); *Int'l Broth. of Teamsters, Local 734 Health & Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818, 825-26 (7th Cir. 1999) ("What we have said about antitrust carries over to RICO, because in *Holmes*, the Supreme Court applied to RICO the same approach to remote injuries [as in] antitrust."); *see also In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1216, 1223 (S.D. Fla. 2021) ("[T]he majority of federal courts to address the issue have applied the [indirect purchaser] rule to RICO claims.") (collecting cases); *Harris Cnty., Tex. v. Eli Lilly & Co.*, 2020 WL 5803483, at

*12 (S.D. Tex. Sept. 29, 2020) (declining to follow the "minority rule" and instead following the three circuit courts that have held that "indirect purchasers lack standing under RICO").

Plaintiffs' suggestion that these cases represent a minority rule (ACS Opp. at 24-25) is inaccurate because (as noted) *every* court of appeals to consider the issue has held that the indirect purchaser rule applies in the civil RICO context.  Plaintiffs' attempt to distinguish these cases is unavailing.  *First*, plaintiffs do not discuss the Seventh Circuit's holding in *Teamsters*, conceding that point.  *Second*, the Third Circuit (in *McCarthy*) expressly held that the "precepts taught by *Illinois Brick* . . . apply to RICO claims, thereby denying RICO standing to indirect victims." *McCarthy*, 80 F.3d at 855.  Plaintiffs' suggestion that the Third Circuit "retreated" from *McCarthy* in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999) is inaccurate, as *Steamfitters* did not discuss the indirect purchaser rule at all.  *Steamfitters*, 171 F.3d at 932-34.  And courts in the Third Circuit post-*Steamfitters* rely on *McCarthy* to reject RICO claims.  *See, e.g.*, *MSP Recovery Claims*, 2019 WL 1418129, at *14- 15.  *Third*, plaintiffs' attempt to distinguish the Sixth Circuit decision (*Trollinger*) on its facts is inapt because the court expressly held that "indirect purchasers lack standing under RICO," 370 F.3d at 616, and courts have relied on *Trollinger* to bar RICO claims under the indirect purchaser rule.  *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, 524 F. Supp. 3d 1266, 1285 (S.D. Fla. 2021) (citing *Trollinger* as one of "the three Courts of Appeals that have addressed the issue [and] have held that indirect purchasers cannot sue under RICO").[8]

---

[8] The only court of appeals case cited by plaintiffs expressly *declined* to decide whether the indirect purchaser rule applies in RICO cases.  *See Newton v. Tyson Foods, Inc.*, 207 F.3d 444, 447 (8th Cir. 2000) ("Without deciding whether in some or perhaps all RICO cases the *Illinois Brick* direct-purchaser rule should be applied to determine standing, we simply observe that all the reasons that antitrust standing is limited to those directly injured apply with especially great force here, where there are many intermediaries . . . .").

In light of the above, it is clear that plaintiffs' suggestion that the Supreme Court has "rejected" the indirect purchaser rule in the RICO context (ACS Opp. at 22) is wrong.  And the cases plaintiffs cite do not support that assertion.  Neither *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), nor *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), discusses the rule.  *See MSP Recovery Claims*, 2019 WL 1418129, at *15 ("[T]he Supreme Court's holding in *Bridge* . . . does not preclude the application of the indirect purchaser rule to Plaintiffs' RICO claims").  Plaintiffs' statutory construction arguments regarding the indirect purchaser rule are likewise unpersuasive.  ACS Opp. at 21, 23-24.  Those arguments are belied by the numerous federal courts that have held that the rule *does* apply in the RICO context.[9]  And plaintiffs' argument that the "Whole Act Rule" "demands" that this Court reject the application of the rule to RICO is not supported by the cases cited for that proposition.  *Id.* at 23-24.

Finally, plaintiffs incorrectly assert that even if the indirect purchaser rule applies, plaintiffs' RICO claims may still survive under the co-conspirator exception to that rule.  *Id.* at 26.  Under that exception, "the party who purchases from a co-conspirator middleman is treated as a 'direct purchaser' because the manufacturers and the middleman direct purchaser are viewed as one entity."  *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 14 (D.D.C. 2004).  Here, the exception is inapplicable because (as shown above) plaintiffs' assignors are not themselves direct purchasers of the drugs at issue, but rather "entities that provide health insurance coverage."  Opp. at 36.  In any event, the D.C. Circuit has not recognized the exception, and a number of

---

[9] The magistrate judge's ruling in *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.* (ACS Opp. at 22 n.35) is unpersuasive, as the court did not consider any of the court of appeals decisions or *Holmes* in its discussion of the indirect purchaser rule.  2022 WL 3155035, at *12 & n.3 (S.D. Fla. July 21, 2022), *report and recommendation adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022).  In any event, the district court adopted the magistrate judge's recommendation to dismiss plaintiffs' RICO claim for failure to plead proximate cause.  *Id.* at *11-12.

courts have rejected it.  335 F. Supp. 2d at 14; *see also Harris Cnty., Tex. v. Eli Lilly and Co.*, 2022 WL 479943, at *8-11 (S.D. Tex. Feb. 16, 2022) (concluding that the exception is inconsistent "with the Supreme Court's holdings and express admonitions" regarding the indirect purchaser rule).

Thus, because plaintiffs do not and cannot allege that their assignors are direct purchasers and the indirect purchaser rule applies to civil RICO claims, plaintiffs lack RICO standing.

### B.    Plaintiffs Fail to State RICO Claims

As Pfizer established in its opening brief, even if the Court were to find that plaintiffs have standing, the RICO claims should be dismissed for failure to plead proximate cause or any "predicate act" under RICO.  Br. at 23-31.

#### 1.    Plaintiffs Fail to Plead Proximate Cause

Pfizer demonstrated that plaintiffs cannot allege a proximate causal relationship between defendants' alleged misconduct and any injuries suffered by plaintiffs' assignors, because plaintiffs fail to allege any direct misrepresentation from Pfizer to an assignor and fail to satisfy the *Holmes* factors.  Br. at 24-28.  Plaintiffs' responses are unpersuasive.  Opp. at 34-36.

*First*, plaintiffs' assertion that the Supreme Court's decision in *Bridge* rejected the argument that misrepresentations need to have been made directly to a RICO plaintiff (*id.* at 34) is irrelevant.  *Bridge* held that "a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can[not] prevail without showing that *someone* relied on the defendant's misrepresentations."  *Bridge*, 553 U.S. at 658.  But Pfizer showed that plaintiffs do not plead *any* misrepresentation by Pfizer (Br. at 29-30), which necessarily means that no one could have relied on any such misrepresentation.  Moreover, "the Supreme Court has found proximate cause only where the theory of causation is 'straightforward' and 'there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at

14

different levels of injury from the violation, and no more immediate victim is better situated to sue.'" *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 2021 WL 2853069, at *4 (E.D. La. July 8, 2021) (quoting *Bridge*, 553 U.S. at 648, 657-58).  In the opening brief, Pfizer demonstrated that numerous courts have held that a third-party payor plaintiff (like the assignors here) cannot show proximate cause in the absence of direct misrepresentations from a pharmaceutical manufacturer to that third-party payor.  Br. at 25-27.  This is not because first-party reliance is necessary to show proximate cause, but rather "because otherwise intervening factors . . . interrupt the chain of causation." *In re Xarelto*, 2021 WL 2853069, at *6.

Plaintiffs suggest that Pfizer's cases are factually distinguishable because many of them involve unfair and deceptive marketing or off-label marketing of drugs.  Opp. at 34.  But these factual distinctions are irrelevant because the proximate cause analysis has nothing to do with the *nature* of the alleged injury; rather, it concerns whether there is a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 279.  Just as in the cases cited by Pfizer, a number of "multifaceted and individualized decisions"—including decisions "made by thousands of physicians . . . who exercise their own independent judgment about whether to prescribe" the drugs at issue—"interrupt the chain of causation and extinguish proximate causation" in this case.  Br. at 26 (citing *In re Xarelto*, 2021 WL 2953069, at *8).

Similarly, plaintiffs fail to distinguish *Service Employees International Union Health and Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (D.C. Cir. 2001).  Opp. at 34-35.  Plaintiffs argue that *Philip Morris* is inapposite because the plaintiffs there (welfare trust funds) "did not actually purchase the item that was the subject of deception," but instead were "damaged merely by having to pay expenses related to the subject of the deception." *Id.* at 35.  But that only *confirms* that *Philip Morris* is on all fours with this case, because (as Pfizer has shown)

plaintiffs' assignors likewise never "actually purchase" the drugs at issue from Pfizer, but merely "pay expenses related" to those drugs by covering insurance claims for them.  Br. at 22-23.[10]

*Second*, Pfizer demonstrated that plaintiffs fail to satisfy the *Holmes* factors.  Br. at 28. Plaintiffs rely on out-of-circuit cases to assert that the difficulty of ascertaining damages "is not determinative of the proximate causation inquiry" and that plaintiffs "do not need to identify the amount of damage so long as the fact of damage is based on a plausible theory."  Opp. at 35.  In fact, the D.C. Circuit has held that the difficulty of ascertaining damages is relevant under *Holmes*.  *Philip Morris*, 249 F.3d at 1073 n.4.  In any event, plaintiffs fail to satisfy the first two factors not because they have failed to specify the precise amount of damage, but because the "remote, derivative nature of the alleged injuries . . . makes more difficult the determination of the amount of damages that is attributable to the alleged wrongdoing, as distinct from other independent factors."  *Id.* at 1074.  Pfizer also showed that the third factor weighs against allowing the RICO claims to proceed because the government has already obtained a settlement predicated on the same allegations.  Br. at 28.  While plaintiffs assert that Pfizer's settlement with the DOJ is irrelevant because the case cited by Pfizer involved a settlement with "thousands of plaintiffs" rather than the government (Opp. at 36), plaintiffs offer no explanation of why the *number* of plaintiffs should have any significance.[11]

---

[10] Although plaintiffs' opposition cursorily suggests that plaintiffs' assignors "purchased the product that was the subject of the deception" (Opp. at 35), that suggestion is not supported by any allegation in the complaint, and as noted, plaintiffs have conceded that they are not purchasers of the drugs at issue.

[11] Plaintiffs' claim that they were the "direct, intended, and only victims" of the putative "scheme" (Opp. at 37) cannot be squared with the settlement, which resolved "civil claims" that the "United States contend[ed]" it had against Pfizer.   Compl., Ex. A at 2.

2.      Plaintiffs Fail to Adequately Plead a Predicate Act

Pfizer also showed that plaintiffs fail to plead a RICO predicate act, whether for mail and wire fraud or for violations of the Travel Act.  Br. at 28-31.  Plaintiffs' responses fall short.

*First*, as to mail and wire fraud, plaintiffs mischaracterize the caselaw regarding the level of detail required to plead such fraud.  For example, plaintiffs' reliance on *Feld* is misplaced (ACS Opp. at 12-13) because there, in addition to alleging a "scheme to defraud generally," the court found that Rule 9(b) was met because the complaint "further sets out how those of the defendants who are alleged to have committed wire fraud did so, with references to specific communications, dates, senders, and recipients."  *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012).[12]  Likewise, in *Dooley v. United Technologies Corp.*, the court held that the "general allegation of use of the mails and wires by the various defendants" were "*not* specific enough to meet Federal Rule of Civil Procedure 9(b)" because "[t]he Complaint fails to identify specific examples of use of the mails or wires by the British defendants."  803 F. Supp. 428, 441 (D.D.C. 1992) (emphasis added).[13]  None of plaintiffs' cases holds that a complaint like the one here—that makes only generalized assertions of use of the mail and wires by all defendants—satisfies Rule 9(b).[14]

---

[12] Plaintiffs claim that the Supreme Court (in *Bridge*) held that a mail and wire fraud claim may sufficiently be pleaded where "the alleged mail and wire transmissions were between the defendants and themselves or third parties, and not between the defendants and the plaintiffs."  ACS Opp. at 13.  That language does not appear in the Supreme Court's opinion, but is from a district court case (*Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787, 801 (D. Md. 1998)).

[13] The court in *Dooley* found that the general allegations of use of the mail and wires were sufficient only when paired with more specific factual allegations the plaintiff also made.  803 F. Supp. at 441.  But that does not help plaintiffs here, because they have not offered *any* specific factual allegations of use of the mail or wires by Pfizer (or anyone) to further the "scheme."

[14] Plaintiffs' discussion of *Federal Information Systems, Corp. v. Boyd* is misleading because the plaintiffs there made specific allegations as to the defendants' use of the mail and wires.  753 F. Supp. 971, 975 (D.D.C. 1990) (noting that the complaint alleged when and how amounts were

Plaintiffs' argument that *Bates v. Northwestern Human Services, Inc.* and its progeny (ACS Opp. at 13-14) were "rejected" by *Bridge* is incorrect.  *Bridge* held only that first-party reliance is not necessarily required to plead proximate causation, while making clear that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations."  553 U.S. at 658.  As explained in the opening brief (Br. at 29-30), to the extent that plaintiffs seek to allege concrete examples of use of the mail and wires by any defendant, those allegations are in paragraph 186.  But the threadbare allegations in that paragraph are insufficient, including because plaintiffs fail to identify any misrepresentation made *by Pfizer* upon which *anyone* relied.  Indeed, a court recently dismissed RICO claims brought by an MSP plaintiff on the same grounds, finding that the plaintiff had failed to "identify false or misleading statements by Defendant" and declining to "give credit to . . . conclusory statements" that the defendants had made misrepresentations to prescribers.  *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, 2022 WL 17220647, at *6-7 (C.D. Cal. Oct. 20, 2022).

Plaintiffs do not respond to Pfizer's demonstration that paragraph 186 is plaintiffs' only attempt to show that defendants used the "mails and wires to perpetuate" the alleged "scheme," and that the attempt fails.  Opp. at 36-37; ACS Opp. at 14-15.  Instead, plaintiffs try to distinguish Pfizer's cases.  But in doing so, plaintiffs only confirm the deficiencies in the complaint.  For example, in *N'Jai v. United States Department of Education*, the court found that the complaint failed because its allegations were "lengthy [but] not specific" and did not specify "when or how" certain actions allegedly occurred—just as is the case here.  2021 WL 1209281,

---

taken, how and when defendants stole plaintiffs' mail, and defendants' use of eavesdropping and wire intercepting).

at *7 (D.D.C. Mar. 31, 2021).  And in *Sandza v. Barclays Bank PLC*, the court found the

complaint "woefully deficient" because the plaintiff grouped "approximately 114" instances of

purported fraud together without specifying "a time or place for any of" them—again, just like

here.  *Compare* 151 F. Supp. 3d 94, 108-09 (D.D.C. 2015), *with* Compl. ¶ 186 (alleging that the

purported scheme "involved thousands of communications" without specifying any).

      *Second*, the opening brief explained why plaintiffs cannot plead predicate acts under

RICO through an indirect application of the Travel Act, as another federal court held earlier this

year.  Br. at 30-31 (citing *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *4 (D.

Minn. Apr. 5, 2022)).  Plaintiffs' only response is that the *EpiPen* decision—which rejected

substantially the same arguments made in plaintiffs' opposition—was wrongly decided.  ACS

Opp. at 15-21.  Pfizer joins in ACS and PAN's replies as to this argument.

## IV.  Plaintiffs' State Law Claims Should Be Dismissed

      In the opening brief, Pfizer explained that after the Court dismisses plaintiffs' only

federal claims (under RICO) it should decline to exercise supplemental jurisdiction over the state

law claims.  Br. at 32.[15]  If the Court were to exercise supplemental jurisdiction, Pfizer has

shown that plaintiffs' state law claims should be dismissed for a number of independent reasons.

*Id*. at 33-39.  Plaintiffs' arguments to the contrary are unpersuasive.

### A.  Plaintiffs' Assignors Lack Standing to Assert Claims Under State Laws Where They Are Not Residents and Were Not Injured

      Whether the named plaintiffs have standing to assert any of their state law claims is a

threshold question that should be resolved at the pleading stage because Pfizer is challenging the

---

[15] Because plaintiffs both lack standing to assert RICO claims and cannot state a RICO claim, for
the reasons shown above, plaintiffs' request for leave to amend should be denied as futile, as
explained in the case cited by plaintiffs themselves.  *Banner Health v. Burwell*, 55 F. Supp. 3d 1,
8 (D.D.C. 2014) (cited by Opp. at 45).

*named plaintiffs'* ability to bring their own claims, as plaintiffs' own cases acknowledge.  *See, e.g.*, *Molock v. Whole Foods Mkt., Inc*., 297 F. Supp. 3d 114, 130 (D.D.C. 2018) (determination of standing for putative class may be delayed "provided that there is a named plaintiff with standing to raise one claim").[16]  Plaintiffs cite no controlling authority for their contention that third-party payors, like the assignors here, may assert claims under the laws of states in which the assignors themselves concededly were not injured; instead, they rely on a handful of out-of-circuit district court decisions.  Opp. at 38-39.  But, as other courts have explained, third-party payors (like the assignors) lack standing under state laws based on purchases by their members in those states if the assignors are "not suing derivatively for injury to [their] members."  *In re Rezulin Products Liab. Litig*., 392 F. Supp. 2d 597, 611 & n.85 (S.D.N.Y. 2005).  As in *Rezulin*, "the only injury asserted here" is the putative "loss [that the assignors] allegedly suffered when [they] overpaid" for claims related to the drugs—i.e., an injury that was suffered "in the state in which [the assignors] are based."  *Id.*; *see also In re OSB Antitrust Litig*., 2007 WL 2253425, at *15-16 (E.D. Pa. Aug. 3, 2007) (holding that plaintiffs "have not stated a claim on their own behalf under the laws of [certain states], and may not represent class members within these states" because they "have not alleged that they sustained injury within these states").  Thus, plaintiffs have not met their burden of demonstrating standing for their state law claims.  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (explaining that "[t]o demonstrate standing 'named plaintiffs who represent a class must allege

---

[16] *See also Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp*., 221 F. Supp. 3d 227, 236 (D.R.I. 2016) (standing question could be delayed until class certification where defendants did not challenge the named plaintiffs' standing to sue, only their ability to sue on behalf of the class); *In re: McCormick & Co., Inc*., 217 F. Supp. 3d 124, 144 (D.D.C. 2016) (citing *Sheet Metal Workers*); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) (delaying standing inquiry where "Defendants do not contest the fact that the named Plaintiffs have standing to bring their individual claims").

and show that they personally have been injured'" and holding that indirect purchaser plaintiffs

had not demonstrated standing as to states where they did not reside).

### B.    Plaintiffs' State Law Consumer Protection Claims Fail

Pfizer showed that all of plaintiffs' consumer protection claims fail because plaintiffs do

not plead them adequately under Rule 9(b).  Br. at 36.  Pfizer also showed that certain claims fail

because they are time-barred and/or the assignors lack standing to bring the claim.  *Id.* at 36-38.

*First*, all of plaintiffs' consumer protection claims fail because they have not adequately

pleaded any misrepresentations under Rule 9(b).  *Id.* at 36.  Plaintiffs contend that most of their

consumer protection claims do not require a deceptive act, and to the extent that any of their

remaining claims do, the heightened pleading requirements do not apply to some deceptive acts.

Opp. at 40-41.  But that is irrelevant, because *all* of plaintiffs' state consumer protection claims

are based on alleged misrepresentations, which means that Rule 9(b) applies to the claims.

Compl. ¶¶ 209-14.  Plaintiffs fail to even mention the case cited by Pfizer in which a court in this

District dismissed state claims based on alleged misrepresentations for failure to satisfy Rule

9(b).  *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 58 (D.D.C. 2017).[17]

*Second*, Pfizer established that plaintiffs' Connecticut, Illinois, New York, Ohio, South

Carolina, and Wisconsin consumer protection claims are time-barred.  Br. at 36-37.  In response,

plaintiffs contend that while they "discovered" the putative "scheme" in 2018, "the Scheme, and

corresponding harm, is ongoing."  PAN Opp. at 37.  This contention is not supported by the

complaint, which—in the paragraph cited by plaintiffs—merely alleges that their assignors "paid

---

[17] Plaintiffs suggest that all of their allegations satisfy Rule 9(b), citing to their opposition to
PAN's motion.  Opp. at 40.  However, that brief only discusses Rule 9(b) in relation to plaintiffs'
*RICO* claims.  PAN Opp. at 10-12.  That brief purports to incorporate by reference plaintiffs'
opposition to Pfizer's motion.  *Id.* at 12 n.12.  But nowhere in the latter brief do plaintiffs explain
how their state claims satisfy Rule 9(b).  Opp. at 40-41.

over $22.6 million in claims" for the drugs at issue from "January 1, 2012, to present," and

alleges nothing about whether the "scheme" is "ongoing." *Id.*; Compl. ¶ 147.  And in fact, the

complaint affirmatively alleges that 2016 was "the final year of the Scheme" and thus purports to

bring a class action for a period running "through December 31, 2016."  Compl. ¶¶ 86, 159.

Nowhere in the complaint do plaintiffs make factual allegations suggesting that any of the

purported wrongful conduct occurred after 2016.  Because the complaint does not allege a

scheme continuing past 2016, neither the "continuing course of conduct" nor the "continuing

violation" tolling doctrines apply.  This dooms plaintiffs' claims under Illinois, New York, Ohio,

South Carolina, and Wisconsin law, as to which plaintiffs' only statute of limitations argument is

that the "continuing violation" doctrine applies.  PAN Opp. at 38.

   As to Connecticut, "a continuing course of conduct" "may toll the statute of limitations"

if there is "evidence of the breach of a duty that remained in existence after commission of the

original wrong related thereto" and "there has been evidence of either a special relationship

between the parties giving rise to such a continuing duty or some later wrongful conduct of a

defendant related to the prior act." *Neuhaus v. DeCholnoky*, 280 Conn. 190, 201-02 (2006).

Plaintiffs' argument fails because there is no "continuing course of conduct" alleged in the

complaint and also because there is no "special relationship" between Pfizer and plaintiffs'

assignors.  Plaintiffs' suggestion that the "scheme" at issue "implicates a special trust

relationship" (PAN Opp. at 37-38) is unsupported by their case, which held that a physician

"occupied a position of trust vis-à-vis Medicare and Medicaid as the medical director and

manager of [] an authorized provider" for purposes of a sentence enhancement. *U.S. v. Babaria*,

775 F.3d 593, 596-97 (3d Cir. 2014).  Plaintiffs cite no case holding that a pharmaceutical

manufacturer has a special trust relationship with a third-party payor under Connecticut law.

Nor do plaintiffs allege a special trust relationship. *Carter v. Univ. of Conn.*, 264 F. App'x 111, 112-13 (2d Cir. 2008) ("continuing course of conduct" doctrine did not apply in part because the complaint did not refer to any special trust relationship with the defendant).

*Third*, plaintiffs fail to refute Pfizer's showing that they lack standing under Massachusetts, New York, Ohio, and Wisconsin consumer protection laws. Opp. at 41-43.

- **Massachusetts**:  Plaintiffs argue that the indirect purchaser rule does not bar their claims under section 11 because they do not bring antitrust claims. Opp. at 41-42. But they do not respond to the Massachusetts Supreme Court's decision that indirect purchaser claims cannot be asserted under Section 11 because the section expressly states that "*in any action* brought under this section . . . the court shall be guided in its interpretation of unfair methods of competition by . . . the [Massachusetts] Antitrust Act." *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 63 (2002) (emphasis added); *see also United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1086 (N.D. Cal. 2014) (rejecting argument based on the First Circuit case cited by plaintiffs here because the case "did not address or overrule" Massachusetts authority "finding that indirect purchaser claims cannot be asserted under Section 11").[18]

- **New York**:  Plaintiffs contend that businesses may pursue claims under the statute when the conduct has "a broader impact on consumers at large." Opp. at 42.  But as Pfizer showed, a district court recently dismissed a factually analogous claim brought by the same plaintiffs because "the transactions involved in the alleged scheme are between . . . sophisticated businesses"; that court held that the fact "the scheme may have tangentially affected consumers does not, in and of itself, make Plaintiffs' claim 'consumer-oriented.'" *Abbott Lab'ys*, 2021 WL 2177548, at *17.  Plaintiffs do not attempt to distinguish this case. *See also MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2020 WL 831578, at *10 (D.N.J. Feb. 20, 2020) (holding that where "the transactions involved in the dispute are between other sophisticated businesses," the transactions "are not consumer oriented").

- **Ohio**:  Plaintiffs fail to respond to Pfizer's case, nor do they cite any case that discusses the claim at issue.  Instead, plaintiffs cite cases discussing other states'

---

[18] Plaintiffs do not dispute that they lack standing to bring a claim under section 9 (Opp. at 41-42) and have waived any argument as to that section.  *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

consumer protection laws.[19]  *F.T.C. v. Mylan Lab'ys, Inc.*, 62 F. Supp. 2d 25, 48 (D.D.C.), *on reconsideration in part sub nom.*, 99 F. Supp. 2d 1 (D.D.C. 1999) (Michigan); *Am. Fed'n of State County & Mun. Employees v. Ortho-McNeil-Janssen Pharms., Inc.*, 2010 WL 891150, at *3 (E.D. Pa. 2010) (Pennsylvania).  They have thus waived any argument as to Ohio law.  *See Hopkins*, 284 F. Supp. 2d at 25.

- **Wisconsin**:  Plaintiffs argue that because there is no contract or particular relationship between Pfizer and plaintiffs' assignors, the assignors are "members of the public" for purposes of Wisconsin law, and contend that the assignors' contracts with "non-party PBMs" do not preclude this claim.  Opp. at 43.  But they do not respond to Pfizer's demonstration that in a case that is factually on all fours (*Sanofi-Aventis*), the court dismissed the Wisconsin cause of action because the claims "stem from an ongoing commercial relationship between Plaintiffs' Assignors and [non-party] PBMs."  Br. at 38 (citing *Sanofi-Aventis*, 2020 WL 831578, at *11-12).

## C.    Plaintiffs' Unjust Enrichment Claim Fails

Pfizer showed that plaintiffs' unjust enrichment claim fails because it arises out of contracts and no direct benefit was conferred on Pfizer by the assignors.  Br. at 38-39.  *First*, plaintiffs do not dispute that their claim arises out of contracts; nor do they dispute the settled rule that "an unjust enrichment claim is generally barred where a contract controls the respective rights of the parties."  *Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 215 (D.C. 2021); Opp. at 44.  Instead, they argue that the claim can proceed because their contractual counterparties are not defendants.  Opp. at 44.  But numerous courts have held that unjust enrichment claims are precluded by the existence of a contract governing the subject matter of the dispute, even if one of the parties to the lawsuit is not a party to the contract.[20]  *Jordan Keys & Jessamy, LLP v. St.*

---

[19] Plaintiffs' suggestion that Pfizer "waived any further contention regarding Ohio Rev. Code Ann. §§ 4165 *et seq*." because Pfizer did not address that statute in its opening brief (Opp. at 43) is meritless, as Pfizer argued that all of plaintiffs' Ohio claims are time-barred.  Br. at 36-37.

[20] *See Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) ("an unjust enrichment claim is barred 'if there is a valid contract governing the subject matter of the dispute, even if one of the parties to the claim is not a party to that contract'") (collecting cases); *Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 813 (E.D. Ark. 2016) ("Generally, unjust enrichment does not apply when an express contract exists. This rule also applies to defendants who are not a party to the express contract.") (internal citation omitted).

*Paul Fire & Marine Insurance Co.* is irrelevant, as the court there merely stated in dicta that it was "not at all clear" whether the contract at issue precluded the unjust enrichment claim. 870 A.2d 58, 64-65 (D.C. 2005) (stating that the court "need not decide the merits" of that issue because it held on other grounds that the defendant had "not been unjustly enriched").[21]

*Second*, Pfizer showed that unjust enrichment claims require the plaintiff to have "conferred a benefit on the defendant" and that plaintiffs cannot establish any such conferral of a benefit, because they did not purchase the drugs at issue from Pfizer. Br. at 39. In response, plaintiffs recite a number of irrelevant allegations about the putative "scheme" but do not contest Pfizer's argument that their assignors never purchased the drugs (or anything) from Pfizer. Opp. at 44-45. Instead, plaintiffs appear to contend that because they gave money to entities other than Pfizer in relation to the drugs at issue, their claim should be sustained. *Id.* Such indirect payments fail to state a claim for unjust enrichment. *See Oceanic Expl. Co. v. ConocoPhillips, Inc.*, 2006 WL 2711527, at *21 (D.D.C. Sept. 21, 2006) ("Plaintiffs have failed to state a claim for unjust enrichment because they have failed to allege that *they* conferred a benefit on the defendants. Rather, any benefit[s] to the defendants were conferred by a third party . . . at the directive of [other entities]." (emphasis added)).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint with prejudice.

---

[21] The district court in *Intelect Corp.* relied entirely on the dicta in *Jordan Keys*. *See Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 191 (D.D.C. 2016).

25

Dated:  December 20, 2022                    DAVIS POLK & WARDWELL LLP

                                         By:  */s/ James P. Rouhandeh*
                                             James P. Rouhandeh
                                             Esther C. Townes (*admitted pro hac vice*)
                                             450 Lexington Avenue
                                           New York, New York 10017
                                           Telephone: (212) 450-4000
                                           Facsimile: (212) 701-5800
                                           Email: rouhandeh@davispolk.com
                                           Email: esther.townes@davispolk.com


                                           Neal A. Potischman (*admitted pro hac vice*)
                                           Andrew Yaphe (*admitted pro hac vice*)
                                           1600 El Camino Real
                                           Menlo Park, California 94025
                                           Telephone: (650) 752-2000
                                           Facsimile: (650) 752-2111
                                           Email: neal.potischman@davispolk.com
                                           Email: andrew.yaphe@davispolk.com

                                           *Attorneys for Defendant Pfizer Inc.*