## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MSP RECOVERY CLAIMS, SERIES LLC, a Delaware series limited liability company; MSP RECOVERY CLAIMS PROV, SERIES LLC, a Delaware series limited liability company; MSPA CLAIMS I, LLC, a Florida limited liability company; MAO-MSO RECOVERY II, LLC, Series PMPI, a segregated series of MAO-MSO RECOVERY II, LLC, a Delaware series limited liability company; and MSP RECOVERY CLAIMS SERIES 44, LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PFIZER INC.; ADVANCED CARE SCRIPTS; and PATIENT ACCESS NETWORK FOUNDATION,<br><br>Defendants. | **CLASS ACTION**<br>Case No. 1:22-cv-01419-DLF<br>Hon. Dabney L. Friedrich |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT ADVANCED CARE SCRIPTS' MOTION TO DISMISS THE COMPLAINT

SCHERTLER ONORATO MEAD & SEARS
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004

CALCAGNI & KANEFSKY, LLP
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, NJ 07102

*Attorneys for Defendant Advanced Care Scripts*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT ...................................................................................................................... 2

I.      PLAINTIFFS FAIL TO ALLEGE ANY CAUSE OF ACTION AGAINST ACS, AND THE COURT SHOULD STRIKE THE COMPLAINT'S REFRENCES TO UNRELATED SETTLEMENT AGREEMENTS ............................................................................... 2

II.     PLAINTIFFS HAVE FAILED TO ALLEGE ANY RICO PREDICATE ACTS WITH THE REQUIRED PARTICULARITY.............................................................................. 5
      A.    Plaintiffs' Factual Allegations Are Insufficient under Rule 9(b)............................. 5
      B.    Plaintiffs' Allegations that ACS Violated the Travel Act Are Deficient................ 8
           **1.**  *EpiPen* Correctly Distinguishes Between Claimed Violations of the AKS and "Bribery" as Defined in the Travel Act. .......................................................... 8
           **2.**  Even Under a "Conduct-Based" Approach, the Allegations in the Complaint Are Insufficient to Allege a Violation of the Travel Act.................................. 10

III.    PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE RICO STANDING........ 11

IV.    PLAINTIFFS HAVE FAILED TO PLEAD RICO CLAIMS AGAINST ACS................ 15
      A.    Plaintiffs Have Failed to Allege RICO Injury........................................................ 15
      B.    Plaintiffs Fail to Adequately Plead Causation........................................................ 16
      C.    Plaintiffs Have Failed to Allege a RICO Enterprise, or that ACS Participated in the Affairs of a RICO Enterprise................................................................................... 19
      D.    The RICO Conspiracy and Florida RICO Claims Must be Dismissed.................. 21

V.     Plaintiffs' RICO Claims Are Barred by the Statute of Limitations...................................... 22

VI.    If the Federal Claims Are Dismissed, the Court Should Decline to Exercise Jurisdiction Over Plaintiffs' State-Law Claims...................................................................................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

### CASES

*Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71 (D.D.C. 2019)....... 7

*Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019) ....................................................................... 13, 14

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165

 (D.D.C. 2003) .............................................................................................................................. 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 3

*BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089 (10th Cir. 1999)....................... 21

*Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69 (D.D.C. 2006)................................................. 5, 7

*Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015)....................................... 20

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)........................................ 6, 7, 11, 18

*Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-0150 (DLF), 2020 WL 1536350

 (D.D.C. Mar. 31, 2020)............................................................................................................ 5, 6

*Carter v. Carson*, 241 F. Supp. 3d 191 (D.D.C. 2017)................................................................ 1

*Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146 (D.D.C. 2016) .................................. 21

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)........................ 21

*Coleman v. Pension Benefit Guar. Corp.*, 94 F.Supp.2d 18 (D.D.C.2000).................................. 3

*CostCommand, LLC v. WH Administrators, Inc.*, 820 F.3d 19 (D.C. Cir. 2016) ........................ 24

*Counts v. Gen. Motors*, LLC, No. 1:16-CV-12541, 2022 WL 2079757

 (E.D. Mich. June 9, 2022)......................................................................................................... 13

*Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).................................................. 21

*Dooley v. United Techs. Corp.*, 803 F. Supp. 428 (D.D.C. 1992) ............................................. 6, 7

*E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014) ........................................... 22

*Earle v. Clayton*, No. 19-cv-1419, 2020 WL 95812 (D.D.C. Jan. 8, 2020) ............................... 7, 8

*Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir. 2018) .................... 18

*Fed. Info. Sys., Corp. v. Boyd*, 753 F. Supp. 971 (D.D.C. 1990) .................................................... 7

*Feld Entertainment, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d

   288 (D.D.C. 2012) ........................................................................................................... 5, 24

*Gotlin v. Lederman*, 367 F. Supp. 2d 349 (E.D.N.Y. 2005) ......................................................... 4

*Harris Cnty., Texas v. Eli Lilly & Co.*, No. 19-CV-4994, 2020 WL 5803483

  (S.D. Tex. Sept. 29, 2020) ........................................................................................................ 13

*Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364 (D.N.J.2004) ........................................................... 15

*Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) .................................................... 18

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363 (3d Cir. 2005) ............... 14

*Humana Inc. v. Mallinckrodt ARD LLC*, No. 20-cv-6926, 2020 WL 3041309

  (C.D. Cal. Mar. 9, 2020) ............................................................................................................ 9

*Humana, Inc. v. Indivior, Inc., et al.*, No. 21-2573 (3rd Cir. Dec. 15, 2022) ............................... 12

*Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977) ...................................................................... 13

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353 (3d Cir. 2012)................. 17

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1 (1st Cir. 2019) ....................... 23

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007)........................................................... 4

*In re EpiPen Direct Purchaser Litigation*, No. 20-cv-827, 2022 WL 1017770

  (D. Minn. Apr. 5, 2022) ................................................................................................... 8, 9, 10

*In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56 (2d Cir. 1998) ................................... 24

*In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6 (D.D.C. 2004) ............................................ 14

*In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262 (3d Cir. 2018) ................................... 13

*Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818

  (7th Cir. 1999)..................................................................................................... 13

*Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352 (11th Cir. 2011)... 15, 16

*Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004) .............................. 21

*James Streibich Revocable Tr. of 2002 v. Flagstad*, 2021 WL 1546439

  (N.D. Ill. Apr. 20, 2021) ....................................................................................... 20

*Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787 (D. Md. 1998)................................................ 6

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) ...................................................................... 24

*Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) ........................................................ 23

*Kuwait Airways Corp. v. American Security Bank, N.A.*, 890 F.2d 456 (D.C.Cir.1989) ............ 22

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir.1993)................................................. 21

*McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842 (3rd Cir. 1996).................................................. 12

*MSP Recovery Claims, Series LLC v. 21st Century Centennial Ins. Co.*, No. 20-027660 CA 02,

  2022 WL 2108476 (Fla. Cir. Ct. June 02, 2022) ...................................................... 22

*MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. 19-cv-21607, 2021 WL 2177548,

  (D.N.J. May 28, 2021) ........................................................................................... 12

*MSP Recovery Claims, Series LLC v. Caring Voice Coal.*, Inc., No. 21-CV-21317, 2022 WL

  3155035 (S.D. Fla. July 21, 2022) ......................................................................... 17

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 3:18-CV-2211, 2019 WL

  1418129 (D.N.J. Mar. 29, 2019)............................................................................. 11

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir.2002) .................................. 14

*Perrin v. United States*, 444 U.S. 37 (1979) .......................................................................... 9, 10

*Plumbers & Pipefitters Loc. 572 Health & Welfare Fund v. Merck & Co.*, No. 12-1379, 2013

   WL 1819263 (D.N.J. Apr. 29, 2013) ................................................................... 16

*RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004) ................. 17

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866 (9th Cir. 2010)....................... 18

*Rotella v. Wood*, 528 U.S. 549 (2000) ........................................................................ 23

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009)............................................ 4

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ................................................... 25

*Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473 (D.D.C. 1998) ................... 22

*Son Ly v. Solin, Inc.*, 910 F.Supp.2d 22 (D.D.C. 2012) ................................................... 21

*Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538 (E.D. Pa. 2014)............................ 16

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 (6th Cir. 2004)....................................... 12

*Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F.

   Supp. 1134 (S.D.N.Y.1995) ...................................................................................... 6

*U.S. ex rel. Bergman v. Abbot Lab'ys*, 995 F. Supp. 2d 357 (E.D. Pa. 2014) .......................... 19

*U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10-3165-GHK SSX, 2014 WL 3605896

   (C.D. Cal. July 10, 2014) ...................................................................................... 19

*U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377 (1st Cir. 2011) ........................ 19

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,

   719 F.3d 849 (7th Cir. 2013) .................................................................................. 19

*United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9 (D.D.C. 2014) ............. 23

*United States v. CVS Caremark Corp.*, No. 09-4672, 2015 WL 5582553

   (E.D. Pa. Sept. 22, 2015) ................................................................................. 17, 18

*United States v. Ferriero*, 866 F.3d 107 (3d Cir. 2017)................................................... 9

*United States v. Gross*, 370 F. Supp. 3d 1139 (C.D. Cal. 2019)................................... 9, 10

*United States v. Nardello*, 393 U.S. 286 (1969) ......................................................... 10

*United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13 (D.D.C. 2004) ............................ 22

*United States v. Rogers*, 389 F. Supp. 3d 774 (C.D. Cal. 2019)................................... 9, 10

<u>STATUTES</u>

18 U.S.C. § 1332(a) ................................................................................... 24, 25

18 U.S.C. § 1952 ......................................................................................... 8

18 U.S.C. § 1952(b) ...................................................................................... 8

18 U.S.C. § 1962(c) ...................................................................................... 21

18 U.S.C. § 1962(d) ...................................................................................... 21

<u>RULES</u>

F.R.C.P. 9(b) ...................................................................................... 2, 6, 22

Defendant Advanced Care Scripts ("ACS") submits this reply in support of its motion to dismiss (ECF No. 49) the Complaint of Plaintiffs MSP Recovery Claims, Series LLC ("MSPRC"), MSP Recovery Claims PROV, Series LLC ("Claims PROV"), MSPA CLAIMS I, LLC ("MSPA"), MAO-MSO Recovery II, LLC, Series PMPI ("MAO-MSO"), and MSP Recovery Claims Series 44, LLC ("Series 44") (collectively, "Plaintiffs") against ACS, Pfizer, Inc. ("Pfizer"), and the Patient Access Network Foundation ("PAN," and with ACS and Pfizer, the "Defendants").[1]

## PRELIMINARY STATEMENT[2]

Plaintiffs' opposition to ACS's motion to dismiss contains a ten-page "statement of facts" seeking to introduce information derived from 32 new exhibits filed with the Opposition. *See* (ECF 54-1) (appendix identifying new exhibits). First, these ersatz allegations do nothing to buttress Plaintiffs' wholly deficient claims. Second, Plaintiffs' desperate attempt to drown the Court in documents not referenced in the pleadings and which, when printed, stand about 2 feet high, demonstrates their own lack of confidence in the allegations contained in the Complaint.[3]

As for the Complaint itself, as amply demonstrated in ACS's Opening Brief, it fails to plausibly allege that ACS is liable for the claimed unlawful conduct. Plaintiffs' Opposition does nothing to refute that their RICO claims suffer from a number of fatal flaws, all of which provide independent grounds for dismissal. Despite Plaintiffs' attempts to contort the applicable law, they do not establish that the Complaint adequately alleges mail and wire fraud with the specificity

---

[1] In this Reply, citations to "OB" and references to ACS's "Opening Brief" are to ACS's Memorandum of Law in Support of its Motion to Dismiss (ECF No. 49-1). Citations to "PB" are to Plaintiffs' Response to ACS's Motion to Dismiss (ECF No. 54). Citations to "Compl." are to Plaintiffs' Complaint.

[2] ACS joins in the arguments made in the reply briefs filed by Defendants Pfizer and PAN.

[3] *See Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017) ("Perhaps recognizing the inadequacy of her amended complaint, [the plaintiff] uses her opposition brief to supplement her Rehabilitation Act claims with additional factual allegations, including exhibits, which she claims establish her disability").

required by Rule 9(b).  Moreover, Plaintiffs argument that they have RICO standing because the direct purchaser rule is a "minority view" is demonstrably false.  Plaintiffs have also failed to offer any cogent argument or legal support to show that they adequately pled RICO injury, proximate causation, or the existence of a RICO enterprise.   Further, Plaintiffs' failure to allege RICO claims means their RICO conspiracy claims must be dismissed, regardless of their bizarre claim that the governing law mandating that outcome does not apply.

Nor do Plaintiffs assert any convincing defense to ACS's compelling argument that Plaintiffs' RICO, Florida RICO, and state consumer protection claims are untimely and must be dismissed.  There is no merit to Plaintiffs' arguments that discovery of an "impropriety," rather than their alleged RICO injury, commenced the statute of limitations.  Given the information in the public domain, Plaintiffs should have been on inquiry notice long before they filed suit.  Plaintiffs' fraudulent concealment allegations cannot toll the statute of limitations because (i) they are deficient under Rule 9(b), and (ii) Plaintiffs failed to exercise reasonable diligence.  Finally, Plaintiffs' half-hearted argument that if the Court dismisses their federal claims, their state law claims survive is flimsy and should be dismissed as such.

## ARGUMENT

I.   **PLAINTIFFS FAIL TO ALLEGE ANY CAUSE OF ACTION AGAINST ACS, AND THE COURT SHOULD STRIKE THE COMPLAINT'S REFERENCES TO UNRELATED SETTLEMENT AGREEMENTS.**

Plaintiffs allege that ACS is liable for violating the federal RICO Act (under two different theories) and the equivalent Florida statute, violating the consumer protection laws of 12 different states, and unjust enrichment, and they seek relief including "actual, consequential, compensatory, statutory, treble, punitive, and other damages[.]"  *See* Compl., Demand for Judgment.  But, as ACS proved in its Opening Brief, the Complaint, despite its significant length and numerous attached exhibits, is entirely threadbare when it comes to factual allegations of wrongdoing by ACS.  *See*

(OB: 8-10).  And Plaintiffs' Opposition does nothing to disprove ACS's arguments.  In fact, the allegations touted by Plaintiffs in their Opposition simply show that ACS engaged in the lawful conduct of dispensing prescriptions to patients and interfacing with Pfizer and PAN regarding co-payment assistance for its customers.

"'It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Coleman v. Pension Benefit Guar. Corp.*, 94 F.Supp.2d 18, 24 n. 8 (D.D.C.2000) (internal quotation omitted).  But, as noted above, Plaintiffs have attempted to do just that by using their Opposition to try and introduce a vast web of confusing "facts," which are not alleged in the Complaint, along with 32 exhibits that are neither attached to nor referenced in the Complaint.  This new "information" is not properly before the Court and should not be considered on the Defendants' motions to dismiss.  *See, e.g.*, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("supplemental allegations" contained in a motion to dismiss opposition and "voluminous exhibits attached thereto" were "not properly before the Court").

Even if the Court were to consider these newly minted "facts," they do nothing to salvage Plaintiffs' claims.  In an attempt to create smoke where there is no fire, Plaintiffs stitch together a confusing screed of new "facts" to bolster their claims, including information allegedly taken from public filings by ACS's parent, CVS Health, Inc., which are taken completely out of context and misused by Plaintiffs on this motion.  *See* (PB:  1-10).  None of this information, however, even if one could follow the Plaintiffs' thread, relates to a "conspiratorial scheme" involving the Pfizer Drugs.  Thus, even if the new information is considered with Plaintiff's Complaint, there is not enough to permit the Court to "draw the reasonable inference" that ACS "is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And Plaintiffs have offered no response to ACS's argument that allegations in the Complaint relating to civil settlements ACS entered into with the DOJ relating to "wholly different conduct with other drug manufacturers and charities" did not make it more plausible that ACS engaged in the unlawful conduct alleged, *see* (OB: 9), other than to say, without elaboration, that the allegations in unrelated settlement agreements "corroborate" Plaintiffs' allegations of a scheme involving Pfizer, PAN, and ACS, *see* (PB: 11-12).[4]  Plaintiffs' unfounded assertion should be rejected.  *See, e.g.*, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (affirming dismissal of antitrust complaint and determining that "[a]llegations of anticompetitive wrongdoing in Europe—absent any evidence of linkage between such foreign conduct and conduct here" did not make plausible the plaintiffs' conclusory allegations of a "worldwide conspiracy affecting a global market for elevators and maintenance services").[5]

Plaintiffs' failure to offer anything beyond a vague assertion that ACS's unrelated settlements with the DOJ "corroborate" the Complaint underscores that the Court should, under Rule 12(f), strike the immaterial and prejudicial references to those settlements.  *See* (OB: 10-11); *see also Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005) ("courts hold that references in pleadings to agreements with state or federal agencies may properly be stricken on a Rule 12(f) motion"); *cf. RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009)

---

[4] Elsewhere, Plaintiffs rely on a DOJ press release concerning a settlement between ACS and the DOJ related to Teva Neuroscience, Inc., *see* (ECF 1-10), to claim that the settlement "put a spotlight on ACS's role" in the "Charity Scheme" alleged in Plaintiffs' Complaint.  *See* (PB: 10). The press release at issue does not mention Pfizer, PAN, or the Pfizer drugs at issue in this case, and Plaintiffs' attempt to suggest otherwise is disingenuous.

[5] ACS joins the arguments made in Pfizer's reply brief concerning why Plaintiffs cannot rely on the settlement agreement between DOJ and Pfizer (to which ACS was not a party and which alleges no illegal conduct on the part of ACS) as the factual basis for the allegations of wrongdoing here. ACS also joins the arguments made in Pfizer's reply brief for why the Court should strike from the Complaint references to the settlement agreement between Pfizer and the DOJ.

("Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f)").

## II.   PLAINTIFFS HAVE FAILED TO ALLEGE ANY RICO PREDICATE ACTS WITH THE REQUIRED PARTICULARITY.

### A.   Plaintiffs' Factual Allegations Are Insufficient under Rule 9(b).

Where, as here, a plaintiff alleges predicate acts of mail and wire fraud, "'courts have been particularly sensitive to Rule 9(b)'s pleading requirements in RICO cases . . . and have further required specific allegations as to which defendant caused what to be mailed and when and how each mailing furthered the fraudulent scheme.'" *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-CV-0150 (DLF), 2020 WL 1536350, at *10 (D.D.C. Mar. 31, 2020) (quoting *Bates v. Nw. Human Servs.*, 466 F. Supp. 2d 69, 89 (D.D.C. 2006)).  Those allegations must "state the time, [the] place and content of the false misrepresentation, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud." *Id.*  The Complaint here vaguely references "thousands of communications" by the Defendants but fails to either allege that ACS made a single false statement in furtherance of the alleged RICO scheme or identify an actual false statement made by ACS.  *See* (OB: 12).  Plaintiffs cannot now overcome that failure through the distortions of case law offered in their opposition.

Contrary to what Plaintiffs would have the Court believe, *see* (PB: 12-13), the *Feld* court rejected the defendants' Rule 9(b) argument because the complaint in that case, in addition to explaining the alleged scheme to defraud in general terms, set out "how those of the defendants who are alleged to have committed wire fraud did so, with references to specific communications, dates, senders and recipients." *See Feld Entertainment, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 317-18 (D.D.C. 2012).  As those factual details are

undeniably absent from Plaintiffs' Complaint, *Feld* actually supports ACS's argument that dismissal is warranted under Rule 9(b).

Next, Plaintiffs incorrectly suggests that the Supreme Court in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008), stated that a "plaintiff may sufficiently state a mail and wire fraud claim even where 'the alleged mail and wire transmissions were between the defendants and themselves or third parties, and not between the defendants and [plaintiffs].'" *See* (PB: 13). In fact, the quoted language appears in *Kerby v. Mortg. Funding Corp.*, 992 F. Supp. 787 (D. Md. 1998), a case which does not aid Plaintiffs' argument. In disagreeing with an argument by one of the defendants that the complaint should be dismissed because that defendant was "not differentiated at all in the generalized descriptions of mail and wire fraud," the court noted that the strict requirements of Rule 9(b) can be relaxed where "the alleged fraud concerns facts 'peculiarly within the opposing party's knowledge.'" *Kerby*, 992 F. Supp. at 801 (quoting *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1142 (S.D.N.Y.1995)). Here, though, Plaintiffs have alleged that they relied on "material misrepresentations" by Defendants "about the certifications [sic] their compliance with federal and state law," *see* (Compl., ¶¶ 288, 299, 310), so Plaintiffs have no excuse for failing to allege the details of those alleged material misrepresentations, like their time, place, and content. See *Broidy Cap. Mgmt. LLC*, 2020 WL 1536350 at *10.

In *Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 441 (D.D.C. 1992), *see* (PB: 13), the complaint "fail[ed] to identify specific examples of use of the mails or wires by the British defendants," and the court held that Rule 9(b) was not satisfied by the complaint's "general allegation of use of the mails and wires by the various defendants." However, the plaintiff supported his general allegations with "specific examples of alleged uses of the mails and wires in

furtherance" of the alleged fraudulent scheme, and it was those specific examples that the court relied upon to conclude that plaintiff's RICO claims based on predicate acts of mail and wire fraud were sufficient at the motion to dismiss stage. *See Dooley*, 803 F. Supp. at 441. Measured against *Dooley*, the allegations of mail and wire fraud in this case are clearly insufficient because Plaintiffs have failed to allege "specific examples" of mail and wire fraud by ACS or any other Defendant. The allegations underlying the predicate acts of mail and wire fraud in *Fed. Info. Sys., Corp. v. Boyd*, 753 F. Supp. 971, 975-76 (D.D.C. 1990), *see* (PB: 13), are also far more detailed than Plaintiffs' allegations in this case. Among other things, the *Fed. Info.* plaintiffs alleged the amount taken in the alleged fraud, when that amount was taken, and made various suggestions as to how the victim was defrauded. *See id.*

Plaintiffs argue that ACS mistakenly relies upon *Bates*, 466 F. Supp. 2d at 69, given the Supreme Court's decision in *Bridge* that RICO plaintiffs alleging mail and wire fraud need not prove first-party reliance on the defendant's alleged misrepresentations. *See* (PB: 13-14). However, Plaintiffs neglect to mention that the court in *Bates*, 466 F. Supp. 2d at 91-92, also found that the plaintiff's complaint violated Rule 9(b) because it did not include sufficient allegations concerning the time, place, speaker, and content of the claimed fraudulent uses of the mail and wires. And it is ridiculous for Plaintiffs to suggest that *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 387 F. Supp. 3d 71 (D.D.C. 2019), and *Earle v. Clayton*, No. 19-cv-1419, 2020 WL 95812 (D.D.C. Jan. 8, 2020)—opinions issued eleven and twelve years, respectively, after *Bridge*—were erroneously decided because *Ambellu* "is premised on *Bates*' pre-*Bridge* findings." *See* (PB: 14 n.23). In *Ambellu*, 387 F. Supp. 3d at 84, the court concluded that the complaint was deficient under Rule 9(b) because it "fail[ed] to allege any false statements transmitted using the Postal Service, radio, wires, or television[,]" and not because plaintiffs had failed to allege that the

defendant made a false statement or material omission to them.  Likewise, the dismissal of the RICO claim in *Earle*, 2020 WL 95812 at *10, was unrelated to first-party reliance and was, in fact, due to failure to allege fraudulent statements with the particularity required by Rule 9(b).

### B.    Plaintiffs' Allegations that ACS Violated the Travel Act Are Deficient.

The other RICO predicate act on which Plaintiffs' claims are based is the Travel Act, 18 U.S.C. § 1952.  To show a Travel Act violation, a plaintiff must allege, among other things, that a defendant engaged in specified "unlawful activity," which is defined to include, "bribery . . . in violation of the laws of the State in which committed or of the United States."  18 U.S.C. § 1952(b).  In their Complaint, Plaintiffs allege that the Defendants engaged in a "bribery scheme" in violation of the Anti-Kickback Statute and the False Claims Act.  *See* Compl. ¶¶ 9–11, 13, 62–63, 65–69, 104–08, 154, 162, 180, 185–87, 198–203.  In opposing Defendants' motions to dismiss, Plaintiffs now claim that their Complaint alleges a Travel Act violation because "Pfizer knowingly and willfully bribed PAN to recommend and arrange, with ACS's assistance, for Government beneficiaries to receive Pfizer's medication at the expense of MAOs in violation of the AKS" and because Defendants' conduct was "intended to promote generic bribery."  *See* (PB: 15, 18). Whether the Court considers the allegations in the Complaint itself or the newly expanded allegations in Plaintiffs' Opposition, Plaintiffs have failed to state any claim under the Travel Act because:  (i) *EpiPen* correctly held that AKS violations do not qualify as "bribery" within the meaning of the Travel Act; and (ii) the Complaint does not allege "generic bribery" because no facts are alleged to establish the "special trust" element.

### 1.    *EpiPen* Correctly Distinguishes Between Claimed Violations of the AKS and "Bribery" as Defined in the Travel Act.

In *In re EpiPen Direct Purchaser Litigation*, No. 20-cv-827, 2022 WL 1017770, at *4–5 (D. Minn. Apr. 5, 2022), the court correctly held that "bribery under the AKS is broader than

Travel Act bribery and therefore cannot form a predicate act" for RICO purposes.  *Id.* at *6.  The court first recognized that in *Perrin v. United States*, 444 U.S. 37 (1979), the Supreme Court held that "bribery" within the meaning of the Travel Act refers to "generic" rather than common-law bribery.  Next, following *United States v. Ferriero*, 866 F.3d 107, 115 (3d Cir. 2017), the court analyzed whether the AKS, "falls within the generic definition" of bribery and observed that the AKS does not require a plaintiff to allege that any payment was intended to "corrupt relations which are recognized in a society as involving special trust."  *Id.* at *5 (quoting *Perrin*, 444 U.S. at 45 n.11).  As this element of "special trust" *is* an element of "generic bribery," the *EpiPen* Court concluded that a violation of the AKS does not qualify as "generic bribery" under the Travel Act.

Plaintiffs argue that the *EpiPen* decision "rejected" the reasoning of other courts but the three decisions cited by Plaintiffs[6] do not address the same issue:  whether the AKS constitutes "bribery' within the meaning of the Travel Act.  Rather, they address whether the California commercial bribery statute constitutes "bribery" within the meaning of the Travel Act, and, as noted in *EpiPen*, that California statute "contain[s] the special-trust element of generic bribery." *EpiPen*, 2022 WL 1017770, at *5.  Thus, Plaintiffs have not shown that any court has explicitly disagreed with *EpiPen* or reached a directly contrary result.

Plaintiffs next argue that *EpiPen* improperly applied a "categorical" approach to determining whether a claimed violation of the AKS may serve as a Travel Act predicate.  But as *EpiPen* explained, as a matter of federal statutory interpretation, federal schemes that incorporate state law definitions depend on whether the relevant conduct falls within the "generic definition" of a particular crime, *Ferriero*, 866 F.3d at 115–116, and the same principle must be applied for

---

[6] *United States v. Rogers*, 389 F. Supp. 3d 774 (C.D. Cal. 2019); *United States v. Gross*, 370 F. Supp. 3d 1139 (C.D. Cal. 2019); *Humana Inc. v. Mallinckrodt ARD LLC*, No. 20-cv-6926, 2020 WL 3041309 (C.D. Cal. Mar. 9, 2020).

generic definitions of federal crimes.  In arguing to the contrary, Plaintiffs claim that the Supreme Court applied a "conduct-based approach" to Travel Act predicates in *Nardello* and *Perrin*, but this is an overstatement.  In those cases, the Court was not squarely presented with deciding to apply a "categorical" or "conduct-based" approach.  Ultimately, both courts held that the alleged conduct (i) violated applicable state law; and (ii) fell within the "generic" definition of the relevant predicate, as used in the Travel Act.  *United States v. Nardello*, 393 U.S. 286, 296 (1969); *Perrin*, 444 U.S. at 50.  Thus, these decisions are consistent with *EpiPen*'s categorical approach.

Accordingly, *EpiPen*'s conclusion that the AKS does not fall within the scope of "generic bribery" is sound and should be followed by this Court.[7]

### 2. Even Under a "Conduct-Based" Approach, the Allegations in the Complaint Are Insufficient to Allege a Violation of the Travel Act.

Even if Plaintiffs are correct that the Court should apply a conduct-based approach to determining whether they have stated a claim for "bribery" under the Travel Act, Plaintiffs' claims fail for the simple reason that the "generic" definition of bribery includes a requirement that the defendant must have used a payment to corruptly influence a position of special trust.  The cases cited by Plaintiffs make clear that such a relationship of special trust *is* an element of "generic bribery."  *See Rogers*, 389 F. Supp. 3d at 786-87; *Gross*, 370 F. Supp. 3d at 1149-50.  While Plaintiffs critique *EpiPen*'s interpretation of *Perrin* on this point, they offer no contrary authority for the proposition that special trust is not required to meet the "generic" definition of bribery.  Absent an allegation of some relationship of special trust, Plaintiffs' Travel Act "bribery" claims

---

[7] Plaintiffs argue that the *EpiPen* Court erred when it held that "generic bribery . . . includes the element of a special trust."  (PB: 18).  Yet Plaintiffs have pointed to no contrary authority; while *Perrin* may not have explicitly held that "special trust" is an element of the offense of generic bribery, the very authorities cited by Plaintiffs indicate that the law has evolved to recognize special trust in a broader category of relationships and interactions—not that special trust is irrelevant to the claimed offense.

fail, regardless of whether the claimed violations of the AKS could theoretically qualify as Travel Act predicates.[8]

## III.     PLAINTIFFS HAVE FAILED TO ADEQUATELY ALLEGE RICO STANDING.

In its Opening Brief, ACS argued that the Complaint fails to allege that the Purported Assignors directly purchased the Pfizer drugs from Defendants, and, as a result, Plaintiffs lack RICO standing under the direct purchaser rule. *See* (OB: 14-16). Unable to dispute that their factual allegations are insufficient if the direct purchaser rule applies, Plaintiffs argue that the direct purchaser rule does not apply in RICO cases. *See* (PB: 21-25). They are incorrect. Plaintiffs, as "third-party payors," Compl., ¶ 185, do not have standing to assert the RICO claims.

The Supreme Court has not, as Plaintiffs contend, "rejected" the direct purchaser rule in RICO cases. *See* (PB: 22-24). As one district court explained when Plaintiffs made the identical argument in another case: "Plaintiffs' assertion that the Supreme Court's ruling in *Holmes* exempts RICO claims from standing challenges pursuant to the indirect purchaser rule is erroneous," "[n]othing in *Holmes* undercuts the voluminous federal jurisprudence holding that courts may apply the indirect purchaser rule applies to RICO actions with the same force as in the antitrust context[,]" and "the Supreme Court's holding in *Bridge* . . . also does not preclude the application of the indirect purchaser rule to Plaintiffs' RICO claims." *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 3:18-CV-2211, 2019 WL 1418129, at *14 (D.N.J. Mar. 29, 2019).

---

[8] In a last-ditch effort to save their Travel Act claims, Plaintiffs claim that "the AKS does implicate a special trust relationship." (PB: 19). Plaintiffs cite several cases in which particular bribery schemes also implicated a "special trust" relationship and argue that "Defendants are routinely held liable for abusing" government trust. (PB: 20). However, Plaintiffs pointedly do <u>not</u> claim that the special trust relationship is an *element* of an AKS violation. This, without more, is sufficient to defeat Plaintiffs' claim, for the reasons stated above with respect to *EpiPen*.

In the face of decisions from the Third, Sixth, and Seventh Circuits adopting the rule that indirect purchasers lack standing under RICO, *see* (OB: 14-15), Plaintiffs erroneously assert that only a "minority" of courts apply the direct purchaser rule in RICO cases, and that the discussion of the direct purchaser rule in the cases cited by ACS is merely dicta. *See* (PB: 24-25).  In *MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. 19-cv-21607, 2021 WL 2177548, at *7 n.11 (D.N.J. May 28, 2021), the court rejected as "without legal support" Plaintiffs' argument that the Third Circuit has retreated from *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842 (3rd Cir. 1996). *See* (OB: 24).  And, in an opinion issued just last week, the Third Circuit confirmed that third-party payors like Plaintiffs who provide reimbursement for their insureds' medication are indirect purchasers without standing to assert RICO claims.  *See Humana, Inc. v. Indivior, Inc., et al.*, No. 21-2573, ECF 69 (3rd Cir. Dec. 15, 2022) (non-precedential).  The insurer plaintiffs in *Humana* alleged they were injured when they reimbursed prescriptions "'that otherwise would not have been made and/or paid the higher prices that resulted from'" the insurers being fraudulently induced to include the drugs at issue on their formularies, and the Third Circuit held that the plaintiffs had advanced a "textbook indirect purchaser theory" and the insurers' RICO claim was thus "barred by the indirect-purchaser rule."  *Id.* at 8-9.  Plaintiffs here also rely on a textbook indirect-purchaser theory, and *Humana* establishes that they lack standing to bring RICO claims.

Plaintiffs' claim that *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004), is "not an indirect purchaser case at all," *see* (OB: 24), does not square with the holding in *Trollinger* that "indirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen" while "direct purchasers do have standing."  Courts, including those in the Sixth Circuit, do not share Plaintiffs' skewed understanding of *Trollinger*.  *See, e.g., Counts v. Gen. Motors*, LLC, No. 1:16-CV-12541, 2022 WL 2079757, at *12 (E.D. Mich. June 9,

2022) ("The Sixth Circuit has extended *Illinois Brick*'s antitrust rule to RICO claims") (citing *Trollinger*, 370 F.3d at 616). In its Opening Brief, ACS cited *Int'l Bhd. of Teamsters, Loc. 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*, 196 F.3d 818, 826 (7th Cir. 1999), to support its argument that Plaintiffs lack standing to pursue their RICO claims because they are not direct purchasers of the Pfizer drugs. *See* (OB: 14). Plaintiffs have not addressed *Teamsters*. But, if Plaintiffs can be understood to argue that *Teamsters* is among the cases Plaintiffs contend "simply follow" dicta, *see* (PB: 25), they have provided no supporting analysis. Ultimately, Plaintiffs' view that the direct purchaser rule does not apply in RICO cases is the outlier and should not be followed by this Court. *See Harris Cnty., Texas v. Eli Lilly & Co.*, No. 19-CV-4994, 2020 WL 5803483, at *12 (S.D. Tex. Sept. 29, 2020) (declining to follow the "minority rule" and instead following three circuit courts holding that indirect purchasers lack standing under RICO).

Plaintiffs' reliance on *Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019), for the proposition that they have RICO standing, *see* (PB: 25-26), also misses the mark. As the Supreme Court explained, the plaintiffs in *Apple*, "purchased apps *directly from Apple* and therefore are direct purchasers" under *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977). 139 S. Ct. at 1519 (emphasis added). Likewise, in *In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 275 (3d Cir. 2018) (PB: 25 n.41), the Plaintiffs were "in a direct purchaser relationship with the conspirator Defendants." In contrast, the Plaintiffs here did not purchase the Pfizer drugs from the Defendants and thus lack standing. *See Compl.*, ¶ 185 (describing the Purported Assignors as "third-party payors").[9] Plaintiffs' unfounded claim that they "are **the direct and only victims**" (PB: 26)

---

[9] Citing to Pfizer's Settlement Agreement with the DOJ and paragraphs 30, 102, 107, 139, and 187 of the Complaint, Plaintiffs assert that their claims "are not indirect purchaser claims" because "ACS is a specialty pharmacy that submitted the tainted claims ***directly*** to the Plaintiffs' Assignors." (PB: 26) (emphasis in original). However, neither the Settlement Agreement nor the

(emphasis in original), does not alter the analysis.  "*Illinois Brick* established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers," *Apple*, 139 S. Ct. at 1520, and there are no exceptions for non-direct purchasers who believe themselves to be "direct and only" victims.  No more persuasive is Plaintiffs' attempt to invoke the "co-conspirator exception" to the direct purchaser rule.  *See* (PB: 26).  The exception has not been adopted by the D.C. Circuit, *see In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 14 (D.D.C. 2004), and even the cases cited by Plaintiff reflect that the exception would not apply here.  Under the co-conspirator exception, *Illinois Brick* "does not bar suits for damages by plaintiffs against an initial seller when it is alleged to have conspired in violation of the antitrust laws with the seller directly upstream from plaintiffs."  *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 376 (3d Cir. 2005) (citing *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 631–32 (7th Cir.2002)).  Here, the Complaint does not allege that any members of the "conspiracy" were directly upstream from Plaintiffs, and the co-conspirator exception thus cannot possibly apply.  In fact, the Complaint reflects that the Purported Assignors did not purchase the Pfizer drugs at all—it was the Purported Assignors' beneficiaries who "purchase[d] the subject Pfizer drugs."  *See* Compl., ¶ 139.  And, even then, the Purported Assignors' beneficiaries received the Pfizer drugs not from any of the Defendants but from non-party pharmacies.  *See id.*, ¶ 153.[10]

---

Complaint states that the Purported Assignors purchased the Pfizer Drugs from Defendants, and Plaintiffs allege in paragraph 139 that the "MA Plan and Medicaid Plan beneficiaries" purchased the drugs.

[10] Plaintiffs' general allegations of a conspiracy between ACS and Pfizer, *see* (PB: 26), are beside the point when Plaintiffs do not allege that their Purported Assignors purchased the Pfizer Drugs from any member of the alleged conspiracy.  And, as ACS previously pointed out, the Complaint does not allege that ACS had any knowledge of, or involvement with, the Tikosyn fund, *see* (OB: 24), so ACS could not possibly be deemed a co-conspirator in relation to any purchases of Tikosyn by the Purported Assignors' beneficiaries.

## IV.   PLAINTIFFS HAVE FAILED TO PLEAD RICO CLAIMS AGAINST ACS.

### A.   Plaintiffs Have Failed to Allege RICO Injury.

"[F]or tort-based causes of action, the scope of potential economic injury arising from a patient's—or her health insurer's—purchases of prescription drugs is limited." *Ironworkers Loc. Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352, 1362 (11th Cir. 2011).  In its Opening Brief, ACS established that Plaintiffs have not alleged a cognizable RICO injury because their Complaint does not include allegations that the Pfizer drugs were medically ineffective or unsafe, or that the Purported Assignors did not factor anticipated losses into the premiums they charged.  *See* (OB: 16-18).  Plaintiffs attempt to sidestep the authority cited by ACS by claiming that those cases are inapplicable because Plaintiffs' RICO allegations are not based on off-label marketing, *see* (PB: 27), but that is a distinction without a difference.  Plaintiffs allege that, as the result of a conspiratorial scheme involving fraudulent representations of compliance by Defendants, the Purported Assignors were injured because they paid "supra-competitive prices for artificially inflated quantities" of Pfizer drugs.  *See, e.g.*, Compl., ¶ 1.  However, Plaintiffs have not plausibly alleged economic injury because they have not pled facts to suggest that their Purported Assignors set their insurance premiums in a manner that did not account for the risk of prescriptions "birthed by fraud."  *See Ironworkers*, 634 F.3d at 1360.

The lack of a RICO injury is underscored by the fact that Plaintiffs have not raised "allegations concerning the effectiveness" of the Pfizer drugs.  *See* (PB: 27).  As explained in *Ironworkers*, "there is no economic injury for the purchase of a prescription drug when the drug proves at all beneficial to the patient prescribed it."  634 F.3d at 1360 (citing *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d 364, 380 (D.N.J.2004)).  Further, Plaintiffs have not pled RICO injury through

allegations that they "paid for something of less value than that which was represented by the defendant." *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 549 (E.D. Pa. 2014).

**B.      Plaintiffs Fail to Adequately Plead Causation.**

No more persuasive are Plaintiffs' responses to ACS's arguments that the RICO claims must be dismissed because the Complaint fails to plausibly allege that the conduct by Defendants was the proximate cause of the Purported Assignors' alleged injury. *See* (PB: 28-33).

Plaintiffs incorrectly assert that ACS has conflated proximate cause and injury by arguing that the Complaint fails to plead proximate causation because it does not include allegations that cheaper alternatives existed to the Pfizer drugs, and that any injury to the Purported Assignors was proximately caused by their failure to adequately set premiums. *See* (PB: 29). That proximate cause is lacking in the absence of cheaper alternatives to the Pfizer drugs is a corollary to ACS's argument that a medical professional's decision to prescribe the Pfizer drugs breaks the chain of causation. *See* (OB: 20). If cheaper alternatives to the Pfizer drugs existed, the Purported Assignors could have excluded the Pfizer drugs from coverage on their formularies in favor of such alternatives. *See Ironworkers*, 634 F.3d at 1366. But, in the absence of alternatives to the Pfizer drugs, the Purported Assignors were required to pay for the medically necessary drugs prescribed to Plaintiffs' insureds. *See* Compl., ¶ 8.

In *Plumbers & Pipefitters Loc. 572 Health & Welfare Fund v. Merck & Co.*, No. 12-1379, 2013 WL 1819263, at *1 (D.N.J. Apr. 29, 2013), the plaintiff health insurance providers alleged that Merck's copay coupon program resulted in them paying more for the subject drugs that they otherwise would have. The court found that plaintiffs lacked standing to pursue RICO claims because the complaints lacked sufficient facts from which to infer causation of the alleged injury in the absence of "individualized allegations" that: (i) a patient insisted on being prescribed a drug

covered by the copay program when the patient's doctor would not otherwise have done so, (ii) the drug was prescribed, and (iii) the plaintiffs "were compelled to pay for that prescription in lieu of a cheaper alternative medication." *Id.* at *6-7.  As the court summarized, the complaints were "simply devoid of any factual allegation that the [copay] Programs led any of Plaintiffs' members to receive prescriptions for the Drugs that they otherwise would not have." *Id.* at *7.  That reasoning applies with equal force here.

Next, ACS's argument that the cause of any injury was the Purported Assignors' failure to appropriately set their insurance premiums is supported by *Ironworkers*.  *See* 634 F.3d at 1360 ("to the extent the insurer's payments for medically unnecessary or inappropriate prescriptions exceeded the premiums charged, only actuarial errors would be to blame").  Plaintiffs' claim that *Ironworkers* is entirely irrelevant to the issue of proximate cause does not withstand scrutiny.  *See, e.g., MSP Recovery Claims, Series LLC v. Caring Voice Coal.*, Inc., No. 21-CV-21317, 2022 WL 3155035, at *9 (S.D. Fla. July 21, 2022) ("Pleading proximate cause of a RICO injury is also an essential component. The Eleventh Circuit affirmed dismissal of a complaint on this ground in *Ironworkers*").  Relatedly, Plaintiffs do not dispute that Medicare Part D insurers go through a reconciliation under which the Part D plan "either can receive additional government payments to make up a portion of costs that exceeded those on which its bid and the government's resulting prospective payments were based, or may have to repay to the government a portion of any revenue in excess of its estimated costs and targeted profits." *United States v. CVS Caremark Corp.*, No. 09-4672, 2015 WL 5582553, at *6 (E.D. Pa. Sept. 22, 2015).[11]  Thus, to the extent the Purported

---

[11] *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 365 n.20 (3d Cir. 2012), cited by Plaintiff, explains that "Part D prescription drug plans explicitly share gains and losses with the federal government[.]"  *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004), which, according to Plaintiffs, explains that the "'financial risk' of Parts C

Assignors suffered any loss caused by the alleged conduct resulting in "supra-competitive drug prices," it would be attributable to missteps in the bidding process with the government.

As argued by ACS in its Opening Brief: (i) the Supreme Court explained in *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 11-12, (2010) that a consideration relevant to whether there is a "direct relation" between the claimed RICO injury and the allegedly unlawful conduct is "whether better situated plaintiffs would have an incentive to sue;" and (ii) the government here is a better situated plaintiff which had already brought claims related to the alleged scheme and reached a settlement with Pfizer.  *See* (OB:20-21).  Plaintiffs' claims in response—that they are not bound by the settlement between Pfizer and the DOJ, and that res judicata does not bar their claims, *see* (PB: 29-30)—do not undermine ACS's point that the government is "better situated" to pursue claims relating to alleged violations of the AKS.  In addition, Plaintiffs' assertion that they "were the direct and intended victims" of the alleged scheme to defraud, *see* (*id.*: 31 n.48), is difficult to square with the exhibits touted by Plaintiffs to support their Complaint.  *See, e.g.,* (ECF No. 1-3) ("Pfizer used a third party to saddle Medicare with extra costs . . . The Anti-Kickback Statute exists to protect Medicare, and the taxpayers who fund it, from schemes like these").  That the United States can, and did, act to vindicate the law is another factor indicating that proximate cause is lacking here.  *See Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 144 (2d Cir. 2018) ("The Supreme Court has repeatedly affirmed that the availability of 'a more immediate victim [that] is better situated to sue' cuts against finding proximate cause") (quoting *Bridge*, 553 U.S. at 658); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873-74 (9th Cir. 2010) (concluding that the "United States, not [the plaintiff], was best situated to recover

---

and D is 'borne by the administering entity[,]'" *see* (PB: 30), does not mention Part D at all and the decision actually predates the introduction of Part D by more than one year. *See Caremark Corp.*, 2015 WL 5582553 at *5 ("Part D became effective January 1, 2006").

for fraud against it" and holding that the RICO plaintiff could not show proximate cause based on the defendant's fraud against the United States").

Responding to ACS's argument that proximate cause is lacking because the Complaint pleads that Plaintiffs were injured by the Defendants' concealment of the alleged predicate acts rather than the predicate acts themselves, *see* (OB: 22), Plaintiffs contend that they have alleged injury from the predicate acts because the Defendants "made false certifications that the claims for the Subject Pfizer Drugs complied with the AKS[,]" *see* (PB: 31-32) (citing Compl., ¶¶ 104-06, 152-54, 198-200).  Of the paragraphs cited, only 198-200 mention false certifications caused by Defendants, but those allegations are untethered to Plaintiffs' claimed injuries, which, per the Complaint, resulted from the non-party pharmacies "submitting bills for payment to third-party payors." *See* Compl., ¶¶ 186-87.[12]

### C.   Plaintiffs Have Failed to Allege a RICO Enterprise, or that ACS Participated in the Affairs of a RICO Enterprise.

As argued by ACS in its Opening Brief, Plaintiffs' RICO claims must be dismissed because Plaintiffs failed to sufficiently allege (i) the existence of a RICO enterprise, and (ii) that the Defendants conducted or participated in the affairs of the enterprise and not just their own affairs. *See* (OB: 22-25).  Plaintiffs quibble with ACS's reliance upon *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013), because although the Seventh Circuit observed that the defendants' interactions did not

---

[12] To the extent that the cases cited in footnote 50 of Plaintiffs' Opposition are intended to support an argument that Plaintiffs have sufficiently pled RICO causation, those cases concern the False Claims Act and are thus irrelevant to the analysis.  *See U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 378 (1st Cir. 2011) ("In this qui tam action brought under the False Claims Act . . ."); *U.S. ex rel. Bergman v. Abbot Lab'ys*, 995 F. Supp. 2d 357, 359 (E.D. Pa. 2014) (qui tam case brought under the False Claims Act and similar state statutes); *U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10-3165-GHK SSX, 2014 WL 3605896, at *1 (C.D. Cal. July 10, 2014) (qui tam action asserting violations of the FCA and analogous state false claims statutes).

show that "they had joined together to create a distinct entity for purposes of improperly filling . . . prescriptions," it assumed for purposes of its decision that the complaint pled the existence of an association-in-fact enterprise but concluded that the complaint did not adequately allege that the defendants were conducting the affairs of the alleged RICO enterprise rather than their own affairs. *See* (PB: 33).[13]  In any event, the Complaint is still deficient under *United Food* because it does not allege that ACS was doing anything other than conducting its own affairs, and Plaintiffs' assertions that they have plausibly alleged that ACS participated in conducting the affairs of a RICO enterprise with Pfizer and PAN are meritless.

It is telling that Plaintiffs, to establish the sufficiency of their allegations, rely not on their pleading but on distortion of the arguments raised by ACS to claim that ACS has "effectively" admitted participating in the affairs of a RICO enterprise.  *See* (PB: 34).  The conduct that was actually alleged in the Complaint—ACS filling prescriptions of the Pfizer drugs and interfacing with PAN and Pfizer in connection with copayment assistance—was simply ACS conducting its own affairs.  Plaintiffs' argument that they have alleged "a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest," *see* (PB: 33-34) (citing *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 656 (7th Cir. 2015)) is wholly unsupported.  The Seventh Circuit determined in *Bible*, 799 F.3d at 655-57, that the plaintiff had pled "more than a run-of-the-mill commercial relationship" based on allegations of "an unusual degree of economic interdependence among the entities," and that "the entities do not operate as

---

[13] In *James Streibich Revocable Tr. of 2002 v. Flagstad*, the court concluded that the plaintiffs had not identified a RICO "enterprise with a common purpose separate from a person or the predicate acts," and, in doing so, explained that the "mere fact 'that the defendants had a commercial relationship' . . . does not imply that 'that they had joined together to create a distinct entity for [RICO] purposes.'"  2021 WL 1546439, at *3-5 (N.D. Ill. Apr. 20, 2021) (quoting *United Food*, 719 F.3d at 855).  As such, *United Food* does, contrary to Plaintiffs' position, *see* (PB: 33), support ACS's argument that Plaintiffs' allegations of a RICO enterprise are deficient.

completely separate entities" to the point that counsel for one of the entities appeared on behalf of another entity at a settlement conference and settlement releases negotiated by one alleged member of the enterprise also covered other entities alleged to be members of the enterprise.  No such facts are alleged here.

### D.      The RICO Conspiracy and Florida RICO Claims Must be Dismissed.

Because Plaintiffs' allegations of a RICO violation are deficient, their RICO conspiracy claims also fail.  *See* (OB: 25).  Although courts in this District and around the country agree that, where the plaintiff has failed to plead a substantive RICO claim under 18 U.S.C. § 1962(c), a RICO conspiracy claim under 18 U.S.C. § 1962(d) necessarily fails,[14] Plaintiffs argue that the success of their RICO conspiracy claims are not "contingent on the underlying RICO violations[.]"  *See* (PB: 34-35).  Plaintiffs misunderstand the law.  The cases cited by Plaintiffs indicate that a defendant can be found liable for RICO conspiracy even if the defendant was not liable for the substantive RICO violation.  *See Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 153 (D.D.C. 2016).  However, that does not mean Plaintiffs can maintain a RICO conspiracy claim even if their substantive RICO claims are dismissed.  A claim under Section 1962(d) cannot proceed without a

---

[14] *See, e.g., Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004) (where the plaintiffs had failed to allege a substantive RICO violation, their "RICO conspiracy claims are likewise unable to survive the defendants' motion to dismiss"); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir.1993) ("Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient."); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 245 (2d Cir. 1999) (reversing judgment finding the defendants liable for RICO conspiracy based on insufficient evidence of a RICO predicate act); *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit"); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990) ("Plaintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts"); *Son Ly v. Solin, Inc.*, 910 F.Supp.2d 22, 27 (D.D.C. 2012) (dismissing claim under § 1962(d) where plaintiffs failed to allege sufficient facts to support violation of other subsection of § 1962).

substantive RICO violation because there would be "no violation in which the defendant could have conspired." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014).

The RICO conspiracy claims must also be dismissed for reasons independent of Plaintiffs' failure to plead a violation of Section 1962(c). Plaintiffs have failed to address, in any meaningful way, ACS's argument the RICO conspiracy allegations are insufficient under Rule 9(b). *See* (PB: 35). Moreover, liability for a RICO conspiracy "requires a showing that: (1) two or more people agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the violation." *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 13, 19 (D.D.C. 2004). Nothing in the Complaint supports Plaintiffs' contention that ACS agreed with Pfizer and PAN to commit mail and wire fraud in furtherance of a "singular goal to eliminate price sensitivity and raise prices to supra-competitive levels." *See* (PB: 36) (citing Compl., ¶¶ 133, 138-55). It is not reasonable to infer that ACS agreed to enter into a conspiracy to defraud because, as part of its contractual relationship with Pfizer, it provided "data" to Pfizer and aided patients in getting copay assistance.

Lastly, Plaintiffs' argument that they stated a Florida RICO claim based on violations of Fla. Stat. § 409.920 not alleged in the Complaint, *see* (PB; 37), is incorrect as a matter of law. *See MSP Recovery Claims, Series LLC v. 21st Century Centennial Ins. Co.*, No. 20-027660 CA 02, 2022 WL 2108476, at *2 (Fla. Cir. Ct. June 02, 2022) ("alleged violations of Fla. Stat. § 409.920 cannot form the basis of a civil RICO claim").

## V.    Plaintiffs' RICO Claims Are Barred by the Statute of Limitations.

A court may grant a motion to dismiss based on the statute of limitations if "'no reasonable person could disagree on the date' on which the cause of action accrued," *Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (quoting *Kuwait Airways Corp. v. American Security Bank, N.A.*, 890 F.2d 456, 463 n. 11 (D.C.Cir.1989)), so merely

disputing when a claim accrued does not end the analysis, *see* (PB: 38).  Plaintiffs and Defendants agree that Plaintiffs' RICO claims are untimely unless they are subject to tolling.[15]  However, there is no merit to Plaintiffs' arguments that their RICO claims did not accrue until the announcement of the settlement agreement between Pfizer and the DOJ.

The key question is when Plaintiffs discovered, or should have discovered through reasonable diligence, their injuries.  *See Rotella v. Wood*, 528 U.S. 549, 554-55 (2000).  The injury discovery rule in RICO cases holds plaintiffs to a "high standard" and incentivizes them to "investigate, prosecute, and bring unlawful activity to light."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012).  Here, there was abundant information in the public domain that would have put a reasonable person on notice of the injury alleged by Plaintiffs.  *See* (OB: 29-33).  A "gift-wrapped admission" of wrongdoing is not necessary for the limitations clock to start.  *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 15 (1st Cir. 2019).

Plaintiffs' assertion that their RICO claims accrued "when the impropriety *itself* is known or reasonably should have been known[,]'" is entirely wrong.  *See* (PB: 39) (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 40 (D.D.C. 2014)).[16]  In addition, Plaintiffs' arguments that the public information would not have allowed them to discover the "scheme," (PB: 40), miss the point.  *See Rotella*, 528 U.S. at 556 (a RICO plaintiff's ability to investigate the cause of his injuries is not "impaired by his ignorance of the underlying RICO pattern").  That the public information prior to the settlement between DOJ and Pfizer did not mention ACS, *see* (PB: 40-41), does not change that all of the other information available would

---

[15] ACS joins in PAN's reply arguments concerning the untimeliness of Plaintiffs' state law claims and Plaintiffs' lack of standing to assert timely claims.

[16] The language from *Tailwind* quoted by Plaintiffs does not relate to RICO but whether claims brought by the government in an FCA case could be tolled under 18 U.S.C. § 2416(c).

have put a reasonable person on inquiry notice.  *See In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) (RICO claim was time barred when investors were on inquiry notice of their alleged injury").[17]

Plaintiffs' fraudulent concealment allegations are insufficient to avoid the statute of limitations bar.[18]  Without providing the details required by Rule 9(b), Plaintiffs allege in conclusory fashion that "Defendants took affirmative steps to conceal" the alleged wrongful conduct.  *See* Compl., ¶ 165.  Critically, the Plaintiffs identify no such "affirmative steps" taken by ACS, and the Complaint also does not reflect that Plaintiffs were reasonably diligent such that they can rely on fraudulent concealment to toll the RICO statute of limitations.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997) (in the civil RICO context, "'reasonable diligence' does matter, and a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment'").

## VI.    If the Federal Claims Are Dismissed, the Court Should Decline to Exercise Jurisdiction Over Plaintiffs' State-Law Claims.

Plaintiffs do not address ACS's argument that Plaintiffs have failed to satisfy their burden to demonstrate the existence of subject matter jurisdiction under 18 U.S.C. § 1332(a) because they have failed to allege their own citizenship, as would be required for the Court to determine whether complete diversity exists.  *See CostCommand, LLC v. WH Administrators, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016) (LLCs, like Plaintiffs, "have the citizenship of each of their members").  In

---

[17] In *Feld*, 873 F. Supp. 2d at 309-11, relied upon by Plaintiffs, the defendants argued, among other things, that an amended complaint adding several new defendants was untimely.  While the court observed that the defendants were able to point to "not-insignificant information at [plaintiff's] disposal . . . that, defendants may be able to show, may well have triggered the statute of limitations for RICO against the new defendants," it did not dismiss the claims against the new defendants because plaintiff asserted that it did not discover its claims "as to the new defendants" until later in time.  *Id.* at 309-11.  The court in *Feld* did not conclude that "Plaintiff's claims were not barred by the statute of limitations after Plaintiff pointed out that none of the information purportedly placing plaintiff on notice involved the conduct of one of the defendants[.]"  *See* (PB: 41).
[18] ACS joins in PAN's arguments on reply concerning Plaintiffs' deficient allegations of fraudulent concealment.

addition, Plaintiffs' arguments that they have satisfied the amount in controversy requirement under 18 U.S.C. § 1332(a) and CAFA, fall short. *See* (PB: 42-43). Plaintiffs' contention that they are "entitled to damages in the full amount for prescriptions paid" relies on FCA cases that have no application here. *See* (*id.*: 43 n.64). "Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985). And, because the Purported Assignors did not suffer any economic injury flowing from the predicate acts, the amount in controversy is necessarily zero. Under these circumstances, ACS respectfully submits that, if the federal claims are dismissed, the Court should decline to exercise jurisdiction over any remaining state-law claims.

## CONCLUSION

For all the reasons above, and those in the other briefs filed by Defendants, the Court should dismiss the Complaint against ACS.

Dated:  December 20, 2022

SCHERTLER ONORATO MEAD & SEARS

By: */s/ Danny C. Onorato*

Danny C. Onorato
(D.C. Bar No. 480043)
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004
DOnorato@schertlerlaw.com

*Attorneys for Defendant Advanced Care Scripts*

Mariellen Dugan, *pro hac vice*
Paul C. Kingsbery, *pro hac vice*
Thomas Coghlan, *pro hac vice*
CALCAGNI & KANEFSKY, LLP
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, NJ 07102
MDugan@ck-litigation.com
PKingsbery@ck-litigation.com
CoghlanT@ck-litigation.com