**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MSP RECOVERY CLAIMS, SERIES LLC,
*et al.*,

        *Plaintiffs*,

    v.

PFIZER, INC., *et al.*,

        *Defendants*.

No. 22-cv-01419 (DLF)

---

## <u>MEMORANDUM OPINION</u>

This case, brought by multiple limited liability companies formed for litigation purposes, involves an alleged agreement between defendants Pfizer, Inc., Advanced Care Scripts, and the Patient Access Network Foundation ("PANF") to illegally increase the price and sales volume of three prescription drugs. Before the Court is Pfizer's and Advanced Care Scripts's Motions to Dismiss, Dkts. 114, 117. For the reasons that follow, the Court will grant the motions to dismiss.

## I.    BACKGROUND

The Court will assume the parties' familiarity with the statutory background, as discussed in the Court's prior memorandum opinion. *See MSP Recovery Claims, Series LLC v. Pfizer, Inc.* (*MSP II*), 728 F. Supp. 3d 89, 97 (D.D.C. 2024).

### A.    Factual Background

"[T]his is far from [the plaintiffs'] first rodeo." *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *15 (S.D.N.Y. March 26, 2021). Plaintiffs are a group of litigation firms that purchase legal claims from assignors—private companies involved in insurance coverage for Medicare and Medicaid participants—and then file class actions around

the country.  *Id.* at *1–2; *see also* Sec. Am. Compl. ¶ 3 n.5, 72.  "Because of the nature of the market we just described, these assignee debt collectors ha[ve] little incentive to perform any diligence on the front end of these transactions to verify the value of what they may have received in the assignment."  *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 873 (7th Cir. 2021).  Instead, they "rush to file litigation in the hope that discovery will show whether an actual case or controversy exists."  *Id.* at 878.  This "approach is not sitting well with many judges," *id.*, and has "garnered harsh criticism from courts across the country," *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 2024 WL 37208, at *4 (E.D. Va. Jan. 3, 2024).  The plaintiffs have filed hundreds of these actions in federal courts, "consuming vast judicial resources" and "imposing enormous burdens on the [judicial] system."  *MSP Recovery Claims, Series 44, LLC v. Zurich Am. Ins. Co.*, 2024 WL 1514133, at *2 (N.D. Ill. Mar. 25, 2024).

As in their other lawsuits, plaintiffs here borrow heavily from no-admission settlement agreements between the DOJ and the defendants.  *See, e.g.*, Sec. Am. Compl. ¶¶ 389, 398, 405.  The second amended complaint alleges that Pfizer conspired with PANF to encourage patients to receive Pfizer drugs through PANF's co-pay program.  *Id.* ¶¶ 616, 619.  Advanced Care Scripts allegedly facilitated this scheme by referring patients to PANF.  *Id.* ¶ 15.  The plaintiffs argue that their assignors were harmed by paying "artificially increased prices" due to this alleged scheme.  *Id.* ¶ 25.

### B.    Procedural Background

On May 20, 2022, the plaintiffs filed a complaint in this Court alleging claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and various state consumer protection, fraud, and unfair trade practice laws, Compl. ¶¶ 167–373, Dkt. 1.  The Court dismissed the complaint for lack of standing, *MSP Recovery Claims, Series*

*LLC v. Pfizer, Inc.* (*MSP I*), No. 22-CV-01419 (DLF), 2023 WL 2770432, at *5 (D.D.C. Apr. 4, 2023), and the plaintiffs filed an amended complaint on May 8, 2023, *see* First Am. Compl., Dkt. 77.  Although the Court concluded that plaintiffs established standing for certain RICO claims, *MSP II*, 728 F. Supp. 3d at 100–03, it ultimately dismissed the RICO claims for failure to state a claim, *id.* at 103–12, and it dismissed the state law claims for lack of standing, *id.* at 100.  The Court allowed the plaintiffs to file a second amended complaint re-raising the state law claims, but not the RICO claims.  Dkts. 110, 111.  All three defendants again moved to dismiss the second amended complaint under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkts. 114, 116, 117.  Subsequently, plaintiffs voluntarily dismissed their claims against PANF. Dkt. 124.  Because the plaintiffs incorporated PANF's arguments in their briefing, the Court will consider the arguments from all three motions to dismiss.

## II.    LEGAL STANDARDS

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Standing to sue is jurisdictional, meaning that if a litigant cannot demonstrate standing, dismissal under Rule 12(b)(1) is proper.  *See, e.g.*, *Conf. of State Bank Supervisors v. OCC*, 313 F. Supp. 3d 285, 294 (D.D.C. 2018) (citing cases).  In deciding motions to dismiss under Rule 12(b)(1), the Court "may consider documents outside the pleadings."  *Id.*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is facially plausible when the complaint contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'" *Sanchez v. Office of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.    ANALYSIS

For the following reasons, the Court concludes it has subject matter jurisdiction over all state law claims except claims raised on behalf of two assignors and claims raised under Delaware law.  It will grant the defendants' motions to dismiss against the remaining claims under Rule 12(b)(6).

### A.    Standing

As before, the Court's subject-matter jurisdiction rests on whether plaintiffs have standing. "Standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Est., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).  Rather, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (quoting *Davis*, 554 U.S. at 734).  When "a case is at the pleading stage, [a] plaintiff must 'clearly . . . allege facts demonstrating'" each element of standing for each claim on which he seeks relief. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

In their second amended complaint, the plaintiffs assert standing to sue on behalf of fifteen assignor entities.  The Court concludes that they lack standing to sue on behalf of two of those entities, Blue Cross Blue Shield Rhode Island and Aspire.  The plaintiffs also lack standing to bring claims under Delaware state law.

#### 1.    *Blue Cross and Aspire*

Plaintiffs have not adequately alleged standing to pursue any state law claims on behalf of two assignors.  In the second amended complaint, the plaintiffs allege that Blue Cross Blue Shield Rhode Island is located and has enrollees in Rhode Island.  Similarly, Aspire is located and has

enrollees in California.  Sec. Am. Compl. ¶¶ 150, 166.  As alleged, Blue Cross Rhode Island and Aspire only have relationships in Rhode Island and California.  But MSP does not allege that any of the subject drugs were purchased in Rhode Island or California.  Since neither assignor suffered an injury from the plaintiffs' alleged fraudulent or unfair trade practices, neither has standing.

In response, the plaintiffs point out that they allege that drug transactions or related events occurred in Rhode Island and California.  Sec. Am. Compl. ¶ 102.  But as the Court previously observed, "the Court must dispense standing to specific plaintiffs and claims rather than groups of plaintiffs 'in gross.'"  *MSP II*, 728 F. Supp. 3d at 100 (quoting *Davis*, 554 U.S. at 734).  The operative complaint fails to allege that Blue Cross and Aspire themselves engaged in transactions in either Rhode Island or California.  Because the complaint does not identify which named plaintiffs have been assigned which claims, the plaintiffs have not adequately established standing for Blue Cross and Aspire.  *See Davis*, 554 U.S. at 734.

### 2.    *Delaware*

To have standing to bring a claim under Delaware law, the plaintiffs must establish that a class member was injured in Delaware.  *See Am. Jewish Congress v. Vance*, 575 F.2d 939, 944 (D.C. Cir. 1978) ("[T]he possibility that other members of the class might have had standing had they brought suit does not thereby confer standing on the named representatives; the actual plaintiffs must show that they have personally suffered an injury redressable by the courts.").  The complaint does not adequately allege that any named assignor was injured in Delaware.  Plaintiffs allege that one assignor— ConnectiCare, Inc.—has enrollees in Delaware.  Sec. Am. Compl. ¶¶ 140, 143.  But plaintiffs fail to allege that ConnectiCare ever paid for the subject drugs in Delaware or even that the drugs were prescribed in that state.  Thus, even if transactions occurred in

Delaware, the Court cannot connect any named assignor to an injury that occurred in Delaware.[1] *See In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35–36 (D.D.C. 2008)

As to the remainder of the state law claims, the Court concludes that alleging assignors paid for subject drugs prescribed by physicians in a state allows the reasonable inference that an injury occurred in those states. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). Although it is possible a patient may be visiting an out-of-state doctor, it makes more sense to connect the injury to the location of prescription. After all, the overpayment could not occur without the doctor's prescription. Because the plaintiffs allege that doctors prescribed the subject drugs in all other relevant states, the plaintiffs have standing to bring claims under those state laws.

### B.    Failure to State a Claim and Rule 9(b)

The Court will dismiss all remaining claims because the plaintiffs fail to plead their claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." *Id.* Interpreting this mandate in combination with Rule 8(a), the D.C. Circuit has explained that plaintiffs must "state the time, place[,] and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud," as well as the "identi[ty] [of the] individuals allegedly involved in the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (internal quotation marks omitted). "A claim alleging conspiracy to commit fraud—no less than a claim alleging fraud alone—implicates the heightened pleading standards of Rule 9(b)." *Arora v. Buckhead Fam. Dentistry, Inc.*, 285 F. Supp. 3d 190, 198 (D.D.C. 2018).

---

[1] Nor can the plaintiffs assert a claim under Delaware law simply because Pfizer is incorporated there. *See Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 323 n.19 (D. Del. 2012).

Federal courts are split on whether Rule 9(b) applies to claims where the underlying statute does not include fraud as an element. *Compare FTC v. Freecom Commc'n, Inc.*, 401 F.3d 1192, 1203 n.7 (10th Cir. 2005) (declining to apply Rule 9(b)) *with Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 739 (7th Cir. 2019) (applying it to claims sounding in fraud).  Although the D.C. Circuit has not decided the issue, the weight of authority supports applying the heightened standard when fraudulent conduct is the underlying basis for the claim.  At least four other circuits have held that "[a] claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct."  *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992); *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996); *see also* Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1297 (4th ed.) ("Beyond traditional fraud, asserting claims premised on fraudulent conduct can trigger the obligation to plead with particularity.").  This general principle makes sense here given that federal courts have applied the heightened pleading standard to every state statute on which MSP relies.[2]  The Court is persuaded

---

[2] *Peterson v. Wells Fargo Bank, N.A.*, No. 3:20-cv-781 (SRU), 2022 WL 972415, at \*10 (D. Conn. Mar. 31, 2022) (Connecticut Unfair Trade Practices Act), *aff'd*, 2023 WL 4363239 (2d Cir. July 6, 2023); *Coleman Dupont Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433, 439 (D. Del. 2007) (Delaware Consumer Fraud Act); *State Farm Mut. Auto. Ins. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327–28 (S.D. Fla. 2017) (Florida Deceptive and Unfair Trade Practices Act); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (Illinois Consumer Fraud and Deceptive Business Practices Act); *Sulligan v. Ford Motor Co.*, No. 22-11668 (LVP), 2023 WL 5180330, at \*10 (E.D. Mich. 2023) (Maine Unfair Trade Practices Act); *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21–22 (1st Cir. 2017) (Massachusetts Regulation of Business Practice and Consumer Protection Act); *In re Packaged Ice*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (Michigan Consumer Protection Act); *Barranca Builders, LLC v. LB/L-Los Santeros Phase I, LLC*, No. 3-293 (JAP), 2003 WL 27384974, at \*4 (D.N.M. Aug. 13, 2003) (New Mexico Unfair Trade Practices Act); *Elson v. Black*, 56 F.4th 1002, 1008–09 (5th Cir. 2023) (New York General Business Law); *Crown Battery Mfg. Co. v. Club Car, Inc.,* No. 13-CV-2158 (JGC), 2015 WL 845732, at \*2–3 (N.D. Ohio Feb. 25, 2015) (Ohio Deceptive Trade Practice Act); *Kee v. Zimmer, Inc.,* 871 F. Supp. 2d 405, 412 (E.D.

by the analysis of numerous circuit and district courts that have held that a plaintiff must state with particularity the circumstances of the fraud when fraudulent actions form the basis of a claim. *See Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 378–80 (D.D.C. 2015).

MSP's claims plainly sound in fraud. The entirety of the second amended complaint focuses on the false and fraudulent statements that the defendants allegedly made. Although portions cursorily allege that the scheme "undermined or offends other significant public policy considerations," see Sec. Am. Compl. ¶¶ 644, 738, 836, all underlying factual allegations rest on the defendants' purportedly deceptive and false statements. The crux of the plaintiffs' allegations is that assignors were injured because they "paid for fraudulently-generated claims, and paid for fraudulently-induced quantities of" drugs. *Id.* ¶ 3. Remove the fraudulent conduct, and all that is left are bare assertions that the defendants violated the law. Rule 9(b) therefore applies to MSP's claims.

In its previous order, this Court dismissed the plaintiffs' RICO claims because the complaint did not allege fraud with particularity as required by Rule 9(b). *MSP II*, 728 F. Supp. 3d at 111. Because the plaintiffs' deceptive practices and unjust enrichment counts are subject to the same particularity requirements, the Court finds that the second amended complaint did not remedy the pleading deficits. Although the amendments add length and recharacterize the same factual allegations to make them seem worse, they "are lengthy, [but] are not specific." *Saunders v. Davis*, No. 15-cv-2026 (RC), 2016 WL 4921418, at *12 (D.D.C. Sept. 15, 2016). As before, the plaintiffs allege that the defendants lied to the Department of Health and Human Services, but

---

Pa. 2012) ( Pennsylvania Unfair Trade Practices and Consumer Protection Law); *Goodman v. HTC Am., Inc.*, No. 11-1793 (MJP), 2012 WL 2412070, at *16 (W.D. Wash. June 26, 2012) (Washington Consumer Protection Act); *American Orthodontics Corp. v. Epicor Software Corp.*, 746 F.Supp.2d 996, 999 (E.D. Wis. 2010) (Wisconsin Deceptive Trade Practices Act).

the content of those lies, their circumstances, and the defendants' intent are all "frustratingly opaque." *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 109 (D.D.C. 2015). For instance, the complaint alleges that Pfizer "knew that PANF was using Pfizer's money to cover the co-pays of patients taking Pfizer drugs." Sec. Am. Compl. ¶ 390 (cleaned up). But as the Court previously observed, this does not explain how that knowledge rendered any statement by Pfizer false or fraudulent. *MSP II*, 728 F. Supp. 3d at 112. Nor does the complaint explain what data Pfizer received from PANF, who was involved, or when that data was conveyed. *See, e.g.*, Sec. Am. Compl. ¶ 68. Similarly, MSP's allegations against Advanced Care amount to generally pointing to its "position of trust," *id*. ¶ 516, which it apparently violated by submitting "tainted" Medicare and Medicaid claims, *id.* ¶ 575. But the Court is left uncertain as to how Advanced Care knew the claims were tainted, which individuals were involved, or what actions it took to advance the alleged scheme. *See Arora*, 285 F. Supp. 3d at 198. Most of the amendments add details regarding the assignments, Redline Compl. ¶¶ 109–188, Dkt. 109-1, general allegations regarding drug pricing and PAPs, *id.* ¶¶ 237–298, and discussions of trust and intent, *id.* ¶¶ 507–566. Those additions provide helpful context regarding the pharmaceutical market, the way PAPs can inflate prices, and the corporate structure and relationships between various entities. But they utterly fail to explain "the 'who,' 'what,' 'when,' and 'where' with respect to the circumstances of the fraud." *United States v. Comstor Corp.*, 308 F. Supp. 3d 56, 68 (D.D.C. 2018). The allegations of the second amended complaint do not satisfy Rule 9(b)'s pleading requirements.

The plaintiffs resist, pointing to specific allegations in the complaint that they claim meet Rule 9(b)'s pleading standard. *See* Pl.'s Opp'n to Advanced Care at 11, Dkt. 54. But many of the cited paragraphs have not substantively changed from the First Amended Complaint—which failed to satisfy Rule 9(b). *Compare* First Am. Compl. ¶¶ 10, 124, 152–53, 160 *with* Sec. Am. Compl.

¶¶ 18, 319, 347–48, 350, 361; *see also* Redline Compl. ¶¶ 15, 17, 17 n.11, 40, 54–55, 63, 67, 69, 105–08, 405 n. 102, 577–78, 593, 598–601, 606 (showing little to no change).  The new paragraphs merely add conclusory assertions of knowledge and intent.  *See* Sec. Am. Compl. ¶¶ 349, 362, 536.  Without "some facts to support" allegations of the defendants' knowledge, the complaint "stops short of the line between possibility and plausibility of entitlement to relief."  *Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam*, 406 F. Supp. 3d 72, 80 (D.D.C. 2019), *aff'd sub nom. Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam Ethiopian Orthodox Tewhado Religion Church*, No. 19-7124, 2020 WL 873574 (D.C. Cir. Feb. 14, 2020) (quoting *Iqbal*, 556 U.S. at 678); *see also S.H. v. District of Columbia*, 270 F. Supp. 3d 260, 273 (D.D.C. 2017) (observing that Rule 9(b) "does not mean [a plaintiff] may rely on conclusory allegations of knowledge" (citations omitted)).

The plaintiffs were on notice that their previous complaints did not satisfy Rule 9(b)'s particularity standards.  *MSP II*, 728 F. Supp. 3d at 110–11.  Despite this, the plaintiffs fail to point to any amendments in their operative complaint that rectify this deficiency.  Thus, the Court will dismiss the plaintiffs' remaining claims under Rule 12(b)(6) for failing to state fraud with particularity.[3]

\*     \*     \*

Although plaintiffs generally are allowed to remedy pleading deficiencies in their complaint, this Court has already given the plaintiffs two opportunities to do so.  The parties have undergone three rounds of briefing with hundreds of pages and tens of thousands of words spent on the motions to dismiss alone.  And as the Court has already outlined, *supra*; *MSP II*, 728 F.

---

[3] Because the Court has dismissed all claims, it need not consider the defendants' other arguments for dismissal.

Supp. 3d at 112, this is not the plaintiffs' "first rodeo," *AIG Prop.*, 2021 WL 1164091, at *15.  As in their dozens of other lawsuits across the country, plaintiffs "file deficient complaints, rely on courts to point out the problems, and then repeatedly amend their pleadings until they get it right." *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 6:19-CV-00211 (MAD/TWD), 2019 WL 4222654, at *6 (N.D.N.Y. Sep. 5, 2019).  The plaintiffs have been given enough chances.  Accordingly, the Court will take the uncommon step of dismissing the complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' Motions to Dismiss and dismisses the complaint with prejudice.  A separate order consistent with this decision accompanies this memorandum opinion.


DABNEY L. FRIEDRICH
United States District Judge

March 4, 2024